1

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)

2
MARIE A. MCCRARY (State Bar No. 262670)
HAYLEY REYNOLDS (State Bar No. 306427)

3
100 Pine Street, Suite 1250
San Francisco, CA 94111

4
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

5

6
Attorneys for Plaintiffs

7

8
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

9

10
MOLLY BROWN and ADINA RINGLER,
as individuals, on behalf of themselves, the

11
general public, and those similarly situated,

12
                                    Plaintiffs,

13
            v.

14
FOOD FOR LIFE BAKING CO., INC.,

15
                                    Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO.

**CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; UNFAIR BUSINESS PRACTICES; AND UNJUST ENRICHMENT**

JURY TRIAL DEMANDED

**INTRODUCTION**

1.     Plaintiffs Molly Brown and Adina Ringler, by and through their counsel, bring this class action against Defendant Food For Life Baking Co., Inc. to seek redress for its unlawful and deceptive practices in labeling and marketing its consumer food products.

2.     Consumers are increasingly health conscious and, as a result, many consumers seek foods high in protein. To capitalize on this trend, Defendant prominently labels some of its consumer food products as providing specific amounts of protein per serving depending on the product, such as "7g PLANT-BASED PROTEIN PER SERVING" on the front of its Ezekiel 4:9 Sprouted Flourless Flake Cereal, Raisin. Consumers, in turn, reasonably expect that each product will actually provide the amount of protein per serving claimed on the front of the product package.

3.     However, the Food and Drug Administration ("FDA") recognizes that not all proteins are the same in their ability to meet human nutritional requirements. Some proteins are deficient in one or more of the nine amino acids essential to human protein synthesis and/or are not fully digestible within the human gut. When a human body uses up the least prevalent essential amino acid from a food product, protein synthesis shuts down and all of the remaining amino acids from that protein source degrade mostly into waste. Likewise, whatever portion of a protein source is not digestible is similarly unavailable for protein synthesis. A protein's ability to support human nutritional requirements is known as its "quality."

4.     The FDA required method for measuring protein quality is called the "Protein Digestibility Corrected Amino Acid Score"—known by its acronym PDCAAS (pronounced Pee-Dee-Kass). It combines a protein source's amino acid profile and its percent digestibility into a discount factor ranging from 0.0 to 1.0 that, when multiplied by the total protein quantity, shows how much protein in a product is actually available to support human nutritional requirements. The regulations term this the "corrected amount of protein per serving." 21 C.F.R. § 101.9(c)(7)(ii). For example, a PDCAAS of .5 means that only half of the protein in that product is actually available to support human protein needs. If the product contained 10 grams total protein per serving, the corrected amount of protein would be only 5 grams per serving.

5.      Because protein products can vary widely in their ability to support human protein needs (even between two comparator products with the same total protein quantity), the FDA prohibits manufacturers from advertising or promoting their products with a protein claim unless they have calculated the corrected amount of protein per serving based on PDCAAS and provided this information to consumers in the Nutrition Facts Panel ("NFP") in the form of a percent daily value ("%DV) for protein. 21 C.F.R. § 101.9(c)(7)(i). The %DV is the corrected amount of protein per serving divided by the daily reference value for protein of 50 grams. *Id.* Using the same example of a product containing 10 grams total protein per serving with a PDCAAS of .5, the %DV is 10% (5g/50g). Had all of the protein in the product been useful in human nutrition, the %DV would be 20% (10g/50g).

6.      Accordingly, Defendant's products are unlawfully, unfairly and deceptively misbranded. The protein claims on the front of the package, such as such as "7g PLANT-BASED PROTEIN PER SERVING" are unlawful and in violation of parallel state and federal requirements because Defendant failed to provide a %DV for protein in the NFP calculated according to the PDCAAS methodology.

7.      Moreover, because Defendant's protein claim is in the form of a quantitative amount appearing alone, without any information about protein quality, it is also separately actionable as misleading. FDA regulations prohibit a manufacturer from stating "the amount or percentage of a nutrient" on the front label if it is "false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). The primary protein sources in Defendant's products is wheat. Wheat is a low quality protein with a PDCAAS score between 0.4 and 0.5. Accordingly, although Defendant advertises its products with a "7g PLANT-BASED PROTEIN PER SERVING" claim, it actually provides, in a form that humans can use, as little as 3g protein, i.e., less than half the protein consumers reasonable expect to receive based on the label. This is misleading.

8.      Defendant's unlawful and misleading protein claims caused Plaintiffs and members of the class to pay a price premium for the products.

**PARTIES**

9.      Molly Brown is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Novato, California.

10.      Adina Ringler is an individual and a resident of Northridge, California.

11.      Molly Brown and Adina Ringler are collectively referred to hereafter as "Plaintiffs."

12.      Defendant Food For Life Baking Co., Inc. ("Defendant") is a corporation existing under the laws of California with its principal place of business in Solana Beach, California, and is registered to do business in California.

**JURISDICTION AND VENUE**

13.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and at least one Plaintiffs and Defendant are citizens of different states.

14.      The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

15.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

16.      In accordance with California Civil Code Section 1780(d), Plaintiff Brown concurrently files herewith a declaration establishing that, at various times throughout the class period, she purchased Ezekiel 4:9 Sprouted Waffles in the Original and Golden Flax flavors and the Ezekiel 4:9 Burger Buns in the Sprouted Grains and Sesame flavors from Whole Foods and other grocery retailers in Novato, California from approximately 2018 to approximately July 2021. (Plaintiff Brown's declaration is attached hereto as Exhibit A.)

17.      Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

**SUBSTANTIVE ALLEGATIONS**

18.     Defendant manufactures, distributes, markets, advertises, and sells a variety of food products in the United States under the brand name "Ezekiel 4:9." Some of these products, including cereals, waffles, pasta, buns, and English muffins have packaging that predominately, uniformly, and consistently states on the principal display panel of the product labels that they contain and provide a certain amount of protein per serving. Plaintiffs have attached as Exhibit B a non-exhaustive list of the Ezekiel 4:9 products that make protein claims on the front of the product packages. The products listed in Exhibit B, and any other Ezekiel 4:9 brand product that claims a specific amount of protein on the front of its label, will hereinafter be referred to as the "Products."

19.     The representation that the Products contain and provide a specific amount of protein per serving was uniformly communicated to Plaintiffs and every other person who purchased any of the Products in California and the United States. The same or substantially similar product label has appeared on each Product during the entirety of the Class Period in the general form of the following example:



20.     The nutrition facts panel on the Products uniformly and consistently failed to provide any referenced percent daily value of the Products' protein content throughout the Class Period. The nutrition facts panel of the Products has appeared consistently throughout the Class Period in the

general form of the following example:



21.     As described in detail below, Defendant's advertising and labeling of the Products as containing and providing specific amounts of protein per serving is unlawful, misleading, and intended to induce consumers to purchase the Products at a premium price, while ultimately failing to meet consumer expectations. These representations deceive and mislead reasonable consumers into believing that a serving of the Products will provide the grams of protein as represented on the label, when in fact, correcting for the Products poor protein quality through PDCAAS, the amount provided will be approximately half or less because Defendant uses proteins of low biological value to humans in its products, such as wheat.

**Consumer Demand for Protein**

22.     Many American consumers are health conscious and seek wholesome, natural foods to keep a healthy diet, so they routinely rely upon nutrition information when selecting and purchasing food items. This is especially true in the community of athletes, registered dietitians, and coaches, to which Defendant markets. As noted by FDA Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet." Indeed, the FDA recommends relying on Nutrition Facts Labels as the primary tool to monitor the consumption of protein.[1]

23.     Protein is found throughout the body—in muscle, bone, skin, hair, and virtually every other body part or tissue. The health benefits of protein are well studied and wide ranging. Scientific studies have confirmed that protein can assist in weight loss, reduce blood pressure, reduce

---

[1] FDA Protein Fact Sheet, https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/factsheets/Protein.pdf

cholesterol, and control for risk factors for cardiovascular diseases. The National Academy of Med-icine recommends that adults get a minimum of .8 grams of protein for every kilogram of body weight per day, or just over 7 grams for every 20 pounds of body weight.[2] For a 140-pound person, that means about 50 grams of protein each day. For a 200-pound person, that means about 70 grams of protein each day.

24.      Athletes and fitness enthusiasts typically consume much higher amounts of protein each day; typically between 1 to 1.5 grams of protein for every pound of body weight.

25.      The health benefits of protein are just as important, if not more important, for chil-dren. Children are in a relative state of constant growth and rely on protein as the building block of muscle, bone, skin, hair, and virtually every other body part or tissue. The National Academies of Science recommends the following amounts of daily intake of protein based on age group: 1-3 years old: 13 g of protein per day; 4-8 years old: 19 g of protein per day; 9-13 years old: 34 g of protein per day.[3]

26.      Protein *quantity* by itself does not tell the full story from a human nutritional stand-point. A protein's *quality* is also critical because humans cannot fully digest or utilize some proteins. Proteins are not monolithic. They are simply chains of amino acids, and different types of amino acids chained together in different ways will make different types of proteins. Further, the makeup of the protein changes the function of that protein in the human body, and certain types of proteins are more easily digested and used by humans than others.

27.      All of a human's proteins are formed through the process of protein synthesis within their own bodies. That is, although humans consume dietary proteins, they digest those proteins, break them down into their constituent amino acids, and then use those amino acids as building blocks to synthesize the human proteins necessary for life, tissue repair, and other functions. Of the twenty total amino acids, humans can produce only eleven of them on their own. Humans cannot produce, under any circumstances, nine of the amino acids required for protein synthesis. These nine amino acids are called the "essential amino acids" and they must be supplied through the diet.

---

[2] National Academies of Medicine. *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (Macronutrients).*
[3] *Id.*

28.     All nine essential amino acids are necessary for protein synthesis to take place. Lacking even one essential amino acid will prevent protein synthesis from occurring, and the rest of the proteins will degrade into waste. Accordingly, once the body uses up the limiting essential amino acid from a protein source, the remainder of that protein becomes useless to human protein synthesis and has little nutritional value. As the FDA has explicitly recognized, "[b]ecause excess amino acids are not stored in the body, humans need a constant supply of good quality dietary proteins to support growth and development." 58 Fed. Reg. 2079 at 2101. High-quality proteins, therefore, are those that contain all nine essential amino acids because they have a greater effect on protein synthesis and are fully digestible. A dietary protein containing all of the essential amino acids in the correct proportions is typically called a "complete protein."

29.     A protein source's digestibility also affects the amount of useable protein a person receives from consuming it. Many plant-based proteins are only 85% digestible, meaning 15% of the protein from that source will simply pass through the body without ever being absorbed at all.

30.     As the FDA has stated in official guidance, "Accurate methods for determining protein quality are necessary because different food protein sources are not equivalent in their ability to support growth and body protein maintenance." 56 Fed. Reg. 60366, § B. The Protein Digestibility Corrected Amino Acid Score ("PDCAAS") is the FDA mandated measure of protein quality, and it accounts for both the amino acid profile and the digestibility of the protein. 21 C.F.R. § 101.9(c)(7)(ii). The PDCAAS method requires the manufacturer to determine the amount of essential amino acids that the food contains and then combine that into a discount factor score based on humans' ability to digest the amino acid profile.

31.     Defendant uses plant-based proteins in its products. Because of the differences in benefits depending on the amino acid composition of a protein, the source of protein is important. Whey protein is animal-based and contains all nine essential amino acids. It has a high biological value and is fully digestible by humans. Thus, whey protein has a PDCAAS of 1.0. Plant protein contains higher levels of antioxidants, but rarely contains all nine essential amino acids. Further, plant proteins, such as wheat proteins, which Defendant uses in its Products according to the ingredient lists, are not fully digested by humans. Both types of proteins also typically have a PDCAAS

Class Action Complaint

of between 0.4 and 0.5, meaning only 40-50% of the protein from those sources will be digested and available to humans.

32.     Accordingly, Defendant's use of low quality proteins, even in combination with some higher quality proteins, means that they actually provide far less protein to humans than the Product labels claim.

**Federal and State Regulations Governing Food Labeling**

33.     Identical federal and California laws regulate the content of labels on packaged food. The requirements of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. §§ 101, 102, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The federal laws and regulations discussed below are applicable nationwide to all sales of packaged food products. Additionally, no state imposes different requirements on the labeling of packaged food for sale in the United States.

34.     According to FDA regulations, "[a] statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section, calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as a Percent of Daily Value . . . ***shall*** be given if a protein claim is made for the product . . ." 21 C.F.R. 101.9(c)(7)(i) (emphasis added). Further, FDA regulations require the %DV to be calculated using PDCAAS, a method that accounts for both protein quantity and protein quality. 21 C.F.R. § 101.9(c)(7)(ii); FDA Food Labeling Guide, p. 29, Question N.22.[4] The first step is to calculate the "corrected amount of protein per serving" by multiplying protein quantity by the PDCAAS quality value, and then dividing that "corrected amount" by 50 grams (the "recommended daily value" for protein) to come up with the %DV. *Id.*

---

[4] Guidance for Industry: A Food Labeling Guide ("FDA Food Labeling Guide") p. 29, Question N22, U.S. Food & Drug Administration, https://www.fda.gov/media/81606/download (last accessed February 18, 2020).

35.     Defendant's products all make protein claims on the front label, but fail, uniformly to provide a %DV for protein in the NFP. The protein claim on the front is, therefore, unlawful, and was never permitted to be on the label in the first instance.

36.     In addition to regulating the NFP, the FDA has promulgated a separate set of regulations that govern nutrient content claims on the front of a package. 21 C.F.R. § 101.13. A nutrient content claim is a claim that "expressly or implicitly characterizes the level of a nutrient." 21 C.F.R. § 101.13(b). "Express" nutrient content claims include any statement outside the Nutrition Facts Panel, about the level of a nutrient. 21 C.F.R. 101.13(b)(1); 21 C.F.R. § 101.13(c). Stating information from the nutrition facts panel (such as grams protein per serving) elsewhere on the package necessarily constitutes a nutrient content claim. 21 C.F.R. § 101.13(c).

> A manufacturer cannot make a nutrient content claim in the form of a "statement about the amount or percentage of a nutrient" if the statement is "false or misleading in any respect." 21 C.F.R. 101.13(i)(3).

37.     Under the FDCA, the term false has its usual meaning of "untruthful," while the term misleading is a term of art that covers labels that are technically true, but are likely to deceive consumers.

38.     While a required statement *inside* of the NFP escapes regulations reserved for nutrient content claims (21 C.F.R. § 101.13(c)), the identical statement *outside* of the NFP is still considered a nutrient content claim and is therefore subject to 21 C.F.R. § 101.13(i)(3). 21 C.F.R. § 101.13(c). Indeed, the Ninth Circuit has specifically held that "a requirement to state certain facts in the nutrition label is not a license to make that statement elsewhere on the product." *Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015). Thus, Defendant's quantitative protein claims on the front label are subject to analysis as a nutrient content claim and cannot be false or misleading in any manner.

39.     Moreover, the FDA has explained in published guidance that that "Information on protein quantity alone can be misleading on foods that are of low protein quality" and that "nutrition labeling must allow consumers to readily identify foods with particularly low quality protein to prevent them from being misled by information on only the amount of protein present." 58 Fed. Reg. 2079 at 2101-2.

40.     Defendant's protein representations on the front package are misleading for this very reason. They broadly tout protein quantity *alone* while ignoring that the poor quality proteins in the Products will provide far less useable protein than claimed. The claim on the front is therefore separately misleading and should never have appeared on the package.

**Defendant's Marketing and Labeling of its Products Violates State and Federal Food Labeling Laws**

41.     Defendant's Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 110660, et seq. Defendant makes protein content claims on the front of its Product packages and yet has left the Percent Daily Value column of its nutrition facts for protein completely blank in violation of applicable nutrition labeling regulations. Further, the front label is also independently misleading. Each Products' label states that it provides a specific amount of protein per serving—such as "7g PLANT-BASED PROTEIN PER SERVING" for the Ezekial 4:9 Sprouted Flourless Flake Cereal in Raisin flavor—when, in fact, after adjusting the protein content based on PDCAAS, the products will provide approximately half that much protein.

42.     Defendant's marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

a.  Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

b.  Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

c.  Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

43.     Defendant's marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but

not limited to:

   a.  Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

   b.  Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear food labeling is either missing or not sufficiently conspicuous);

   c.  Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

   d.  Section 110765, which makes it unlawful for any person to misbrand any food; and

   e.  Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

   44.    Defendant has violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including but not limited to 21 C.F.R. § 101.9 (c)(7), which have been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

   45.    A reasonable consumer would expect that the Products provide what Defendant identifies them to provide on the product labels and that the labels would not be contrary to the policies or regulations of the State of California and/or the FDA. For example, a reasonable consumer would expect that when Defendant labels its Products with "7g PLANT-BASED PROTEIN PER SERVING" per serving, as it claimed on the Ezekiel 4:9 Sprouted Flourless Flake Cereal (Raisin) label, the Products would provide 7 grams of protein per serving in a form their bodies could use as protein.

   46.    Consumers lack the meaningful ability to test or independently ascertain the truthfulness of Defendant's food labeling claims, especially at the point of sale. Reasonable consumers do not walk around with the PDCAAS values for various protein sources stored in their heads. They would not know the true amount of protein the Products provide nutritionally merely by looking elsewhere on the product package. Its discovery requires investigation well beyond the grocery store aisle and knowledge of food chemistry beyond that of the average consumer. An average consumer

does not have the specialized knowledge necessary to ascertain that a serving of a Product does not provide the number of grams of protein that is represented on the front of the product package. An average consumer also lacks the specialized knowledge necessary to determine the PDCAAS for the Products. The average reasonable consumer had no reason to suspect that Defendant's representations on the packages were misleading. Therefore, consumers had no reason to investigate whether the Products actually do provide the amount of protein per serving that the labels claim they do and reasonably relied on Defendant's representations regarding the nature of the Products.

47.     Defendant intends and knows that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendant has done with the claims on the Products that they contain and provide specific amounts of protein per serving.

### Defendant Misleadingly Markets Its Products to Increase Profits and Gain a Competitive Edge

48.     In making false, misleading, and deceptive representations, Defendant distinguishes its Products from its competitors' products. Defendant knew and intended that consumers would purchase, and pay a premium for, products labeled with a protein claim. By using this branding and marketing strategy, Defendant is stating that its Products are superior to, better than, and more nutritious and healthful than other products that do not make protein claims, or that do not mislead consumers about the amount of protein their products actually provide.

### Defendant Intends to Continue to Market its Products as Containing More Protein than the Products Actually Contain

49.     Because consumers pay a price premium for products that make protein claims, and also pay a premium for products that provide more protein, by labeling its Products as containing more grams of protein per serving than they actually provide, Defendant is able to both increase its sales and retain more profits.

50.     Defendant engaged in the practices complained of herein to further its private interests of: (i) increasing sales of its Products while decreasing the sales of competitors that do not

misrepresent the number of grams of protein contained in its products, and/or (ii) commanding a higher price for its Products because consumers will pay more for these Products due to consumers' demand for products containing more protein.

51.     The market for protein products is continuing to grow and expand, and because Defendant knows consumers rely on representations about the number of grams of protein in food products, Defendant has an incentive to continue to make such unlawful and misleading representations. In addition, other trends suggest that Defendant has no incentive to change its labeling practices.

52.     For example, one market analysis revealed that between 2013-2017, product launches with a protein claim grew 31%.[5]

53.     To capitalize on the growing market, Defendant continues to launch new product lines and flavors to diversify its portfolio to maintain its competitive edge. Moreover, Defendant has continued to replicate its misrepresentations on the new product lines. It is therefore likely that Defendant will continue to misleadingly advertise its Products and perpetuate the misrepresentations regarding the protein in its Products.

**PLAINTIFFS' EXPERIENCES**

**Plaintiff Molly Brown**

54.     Plaintiff Brown has purchased Ezekiel 4:9 Sprouted Waffles in the Original and Golden Flax flavors and the Ezekiel 4:9 Burger Buns in the Sprouted Grains and Sesame flavors from a Whole Foods and other grocery retailers in Novato, California from approximately 2018 to approximately July 2021.

55.     Plaintiff Brown made each of her purchases after reading and relying on the Defendant's product front label that promised the Products provided a specific number of grams of protein per serving. For example, she purchased the Ezekiel 4:9 Sprouted Waffles in the Original flavor relying on the representation of "9g PLANT-BASED PROTEIN PER SERVING" per serving on the front of the product package. She relied on the protein representation for each product that she purchased and purchased each product because of the protein representations. She also believed in

---

[5]                https://www.bakeryandsnacks.com/Article/2018/11/26/10-key-snack-trends-to-watch?utm_source=copyright&utm_medium=OnSite&utm_campaign=copyright

the truth of each representation, i.e., that the product would actually provide her the specific amount of protein on the front label in a form her body could utilize as protein.

56.     Plaintiff Brown not only purchased the Products because the labels said that they provided a specified amount of protein per serving, but she also paid more money for the Products than she would have paid had the product not unlawfully contained a protein claim, or had that protein claim not been misleading regarding the number of grams of protein it provided.

57.     Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Plaintiff Brown would not have purchased them or, at a very minimum, she would have paid less for the Products.

58.     Plaintiff Brown continues to desire to purchase protein products, including those marketed and sold by Defendant. If the Products were reformulated to provide the grams of protein that are represented on the labels, Plaintiff Brown would likely purchase them again in the future. Plaintiff Brown regularly visits stores where the Products and other protein products are sold. Because Plaintiff Brown does not know the formula for Defendant's products and cannot test whether or not the Products provide the amount of protein that is represented on the label, Plaintiff Brown will be unable to rely on Defendant's labels when shopping for protein products in the future absent an injunction that prohibits Defendant from labeling its products with the incorrect number of grams of protein that each serving contains. Should Defendant begin to market and sell a new line of products, Plaintiff Brown could be at risk for buying another one of Defendant's products in reliance on the same or similar misrepresentation.

59.     Plaintiff Brown and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was and is untrue and/or misleading under state law and the products are misbranded; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

**Plaintiff Adina Ringler**

60.     Plaintiff Ringler has purchased Ezekiel 4:9 Sprouted Flourless Flake cereal in the Raisin flavor at a Whole Foods store in Porter Ranch, California in January and February 2020.

Additionally, Plaintiff Ringler purchased the Ezekiel 4:9 Flourless Sprouted Whole Grain English Muffins from a Ralph's store in Granada Hills, California in January 2020

61.     Plaintiff Ringler made each of her purchases after reading and relying on the Defendant's product front label that promised the Products provided a specific number of grams of protein per serving. For example, she purchased the Ezekiel 4:9 Sprouted Flourless Flake cereal in the Raisin flavor relying on the representation of "7g PLANT-BASED PROTEIN PER SERVING" on the front of the product package. She relied on the protein representation for each product that she purchased and purchased each product because of the protein representations. She also believed in the truth of each representation, i.e., that the product would actually provide her the specific amount of protein on the front label in a form her body could utilize as protein.

62.     Plaintiff Ringler not only purchased the Products because the labels said that they provided a specified amount of protein per serving, but she also paid more money for the Products than she would have paid had the product not unlawfully contained a protein claim, or had that protein claim not been misleading regarding the number of grams of protein it provided.

63.     Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Plaintiff Ringler would not have purchased them or, at a very minimum, she would have paid less for the Products.

64.     Plaintiff Ringler continues to desire to purchase protein products, including those marketed and sold by Defendant. If the Products were reformulated to provide the grams of protein that are represented on the labels, Plaintiff Ringler would likely purchase them again in the future. Plaintiff Ringler regularly visits stores where the Products and other protein products are sold. Because Plaintiff Ringler does not know the formula for Defendant's products and cannot test whether or not the Products provide the amount of protein that is represented on the label, Plaintiff Ringler will be unable to rely on Defendant's labels when shopping for protein products in the future absent an injunction that prohibits Defendant from labeling its products with the incorrect number of grams of protein that each serving contains. Should Defendant begin to market and sell a new line of products, Plaintiff Ringler could be at risk for buying another one of Defendant's products in reliance on the same or similar misrepresentation.

65.     Plaintiff Ringler and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was and is untrue and/or misleading under state law and the products are misbranded; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

## CLASS ALLEGATIONS

66.     Plaintiffs bring this class action lawsuit on behalf of themselves and proposed classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

> The Class: All persons in the United States who purchased the Products between December 29, 2017 and the present.

> The Subclass: All persons in the State of California who purchased the Products between December 29, 2017 and the present.

67.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

68.     Numerosity: Plaintiffs does not know the exact size the Classes, but they estimate that it is composed of more than 100 persons. The persons in the Classes are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

69.     Common Questions Predominate: This action involves common questions of law and fact to the potential Classes because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Products contained the amount of protein as represented on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Classes to recover. The questions of law and fact common to the Classes are:

> a.   What is PDCAAS for the protein in the Products;

b.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are unlawful and/or misleading;

c.   Whether Defendant's actions violate Federal and California laws invoked herein;

d.   Whether labeling the Products with a protein claim causes the Products to command a price premium in the market;

e.   Whether Defendant's advertising and marketing regarding the Products sold to the Class members was likely to deceive reasonable consumers;

f.   Whether representations regarding the number of grams of protein in the Products are material to a reasonable consumer;

g.   Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

h.   The amount of profits and revenues Defendant earned as a result of the conduct;

i.   Whether Class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

j.   Whether Class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

70.   Typicality: Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Classes were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

71.   Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the classes. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all class members. Plaintiffs and their counsel have the necessary

financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

72.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

73.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

Plaintiffs do not plead, and hereby disclaim, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiffs rely on the FDCA and FDA

regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

### PLAINTIFFS' FIRST CAUSE OF ACTION
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiffs and the Subclass**

74.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

75.     Plaintiffs Brown and Ringler bring this claim individually and on behalf of the other

members of the California Subclass.

76.     Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

77.     In particular, Defendant has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), *et seq.* and FDA regulations, including but not limited to 21 C.F.R. 21 C.F.R. § 101.9 (c)(7), which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

78.     In particular, Defendant has engaged, and continues to engage, in unlawful and fraudulent practices by, without limitation, the following: (i) unlawfully making a protein claim on the front of the package without ever providing the required %DV in the NFP; and (ii) misleading reasonable consumers regarding the amount of protein that the Products provide nutritionally in a form that humans can use.

79.     Plaintiffs and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

80.     Defendant's acts and omissions are likely to deceive the general public.

81.     Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by

section 17200, *et seq.* of the California Business and Professions Code.

82.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

83.    As a direct and proximate result of such actions, Plaintiffs and the other Class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and Class members lost the amount they paid for the Products.

84.    As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

85.    Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including restitution for the premium and/or the full price that they and others paid to Defendant as result of Defendant's conduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the California Sherman Law does not provide a direct cause of action, so Plaintiffs and the Class must allege those violations as predicate acts under the UCL to obtain relief.

86.    Plaintiffs also seeks equitable relief, including restitution, with respect to their UCL "fraudulent" prong claims.  Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class

members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

87.     Plaintiffs also seek, on behalf of themselves and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

88.     Plaintiff seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code §**
**1750, *et seq.*)**
**On Behalf of Plaintiffs and the Subclass**

89.     Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint as if set forth herein.

90.     Plaintiffs Brown and Ringler bring this claim individually and on behalf of the other members of the California Subclass.

91.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have

resulted, in the sale or lease of goods or services to consumers.

92.     Plaintiffs and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

93.     The Products that Plaintiffs (and other similarly situated class members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

94.     Defendant's acts and practices, set forth in this Class Action Complaint, led customers to falsely believe that the Products provided the amount of protein claimed on the product package. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code §1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised.

95.     Plaintiffs request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm. Plaintiffs and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

96.     Defendant was provided with notice and a demand to correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other

things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

97.     Plaintiffs also request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

### PLAINTIFFS' THIRD CAUSE OF ACTION
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
**On Behalf of Plaintiffs and the Subclass**

98.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

99.     Plaintiffs Brown and Ringler bring this claim individually and on behalf of the other members of the California Class.

100.     Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

101.     Defendant made representations and statements (by omission and commission) that led reasonable customers to believe that the Products that they were purchasing provided more grams of protein per serving than the Products actually provided. Further, Defendant failed to list the %DV of protein on its Products as it was required to do.

102.     Plaintiffs and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing Defendant's Products or paying less for them.

103.     Defendant's acts and omissions are likely to deceive the general public.

104.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising,

as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

105.    The aforementioned practices, which Defendant used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

106.    As a direct and proximate result of such actions, Plaintiffs and the other Class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

107.    Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

108.    Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that

the above-described practices constitute false, misleading and deceptive advertising.

109.    Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it is not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### PLAINTIFFS' FOURTH CAUSE OF ACTION
**(Common Law Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Plaintiffs and the Classes**

110.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

111.    Plaintiffs Brown and Ringler bring this claim individually and on behalf of the other members of the Class and Subclass.

112.    Defendant has fraudulently and deceptively informed that the Products provide more grams of protein than they actually provide in a form useful to the human body. Further, Defendant failed to list the %DV of protein on its Products as it was required to do.

113.    These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiffs, and material at the time they were made. Defendant knew or should have known the composition of the Products, and knew or should have known that the Products did not contain or provide the amount of protein represented on the label. Defendant's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase Defendant's Products. In misleading Plaintiffs and not so informing Plaintiffs, Defendant breached its duty to them. Defendant also gained financially from, and as a result of, its breach.

114.    Plaintiffs and those similarly situated relied to their detriment on Defendant's misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the Products.

115.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase the Products.

116.    Plaintiffs and those similarly situated justifiably and reasonably relied on Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant.

117.    As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

118.    Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiffs and those similarly situated.

**PLAINTIFFS' FIFTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**On Behalf of Plaintiffs and the Classes**

119.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

120.    Plaintiffs Brown and Ringler bring this claim individually and on behalf of the other members of the Class and Subclass.

121.    Plaintiffs and members of the Class conferred a benefit on the Defendant by purchasing the Products

122.    Defendant has been unjustly enriched in retaining the revenues from Plaintiffs' and Class members' purchases of the Products, which retention is unjust and inequitable, because Defendant falsely represented that the Products contained and provided specific amounts of protein per serving, when, in fact, the Products contained less protein than represented, and provided even

less. This harmed Plaintiffs and Class members because they paid a price premium as a result.

123.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

124.    Plaintiffs, therefore, seek an order requiring Defendant to make restitution to them and other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgement against Defendant as follows:

A.    Certification of the proposed Clasess, including appointment of Plaintiffs' counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D.    An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E.    An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F.    An award of treble damages, except for those causes of action where treble damages are not legally available;

G.    An award of restitution in an amount to be determined at trial;

H.    An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.    For reasonable attorneys' fees and the costs of suit incurred; and

J.    For such further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: December 29, 2021

                                            **GUTRIDE SAFIER LLP**

                                            */s/ Seth Safier/s/*
                                            Seth A. Safier, Esq.
                                            Marie McCrary, Esq.
                                            Hayley Reynolds, Esq.
                                            100 Pine Street, Suite 1250
                                            San Francisco, CA 94111

                                            Attorneys for Plaintiffs

DocuSign Envelope ID: A9C534EB-2DA9-4F4E-81F7-1AF4463AE22A3

## EXHIBIT A

I, Molly Brown, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      As set forth in my complaint, I purchased Ezekiel 4:9 Sprouted Waffles (Golden Flax), Ezekiel 4:9 Sprouted Waffles (Original), and Ezekiel 4:9 Burger Buns (Sprouted Grains and Sesame) from Whole Foods and other grocery retailer(s) in Novato, California from approximately 2018 to approximately July 2021.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 17th day of November 2021, in Novato, California.



Molly Brown

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

**Exhibit B**

| Product Type | Variety/Flavor | Protein Nutrient Content Claim |
|---|---|---|
| **Cereal** | | |
| Ezekiel 4:9 Sprouted Crunchy Cereal | Almond Whole Grain | 8 grams |
| Ezekiel 4:9 Sprouted Crunchy Cereal | Golden Flax | 8 grams |
| Ezekiel 4:9 Sprouted Crunchy Cereal | Low Sodium | 8 grams |
| Ezekiel 4:9 Sprouted Crunchy Cereal | Original | 8 grams |
| Ezekiel 4:9 Sprouted Crunchy Cereal | Cinnamon Raisin | 7 grams |
| Ezekiel 4:9 Sprouted Flourless Cereal | Original Flake | 8 grams |
| Ezekiel 4:9 Sprouted Flourless Cereal | Almond Flake | 8 grams |
| Ezekiel 4:9 Sprouted Flourless Cereal | Raisin Flake | 7 grams |
| Ezekiel 4:9 Sprouted Flourless Cereal | Flax + Chia Flake | 7 grams |
| **Waffles** | | |
| Ezekiel 4:9 Sprouted Waffles | Apple Nut | 10 grams |
| Ezekiel 4:9 Sprouted Waffles | Blueberry | 10 grams |
| Ezekiel 4:9 Sprouted Waffles | Golden Flax | 10 grams |
| Ezekiel 4:9 Sprouted Waffles | Original | 9 grams |
| **Buns** | | |
| Ezekiel 4:9 Hot Dog Buns | Sprouted Grain | 10 grams |
| Ezekiel 4:9 Burger Buns | Sprouted Grain Sesame | 5 grams |
| Ezekiel 4:9 Burger Buns | Sprouted Grain | 5 grams |
| **Pasta** | | |
| Ezekiel 4:9 Sprouted Pasta | Elbows | 8 grams |
| Ezekiel 4:9 Sprouted Pasta | Fettuccine | 8 grams |
| Ezekiel 4:9 Sprouted Pasta | Penne | 8 grams |
| Ezekiel 4:9 Sprouted Pasta | Spaghetti | 8 grams |

| Product Type | Variety/Flavor | Protein Nutrient Content Claim |
|---|---|---|
| **English Muffins** | | |
| Ezekiel 4:9 Flourless Sprouted Whole Grain English Muffins | Original | Complete Protein |
| Ezekiel 4:9 Flourless Sprouted Whole Grain English Muffins | Cinnamon Raisin | Complete Protein |
| Ezekiel 4:9 Flourless Sprouted Whole Grain English Muffins | Flax | Complete Protein |
| Ezekiel 4:9 Flourless Sprouted Whole Grain English Muffins | Low Sodium | Complete Protein |