1  Ellen A. Cirangle (SBN 164188)
   Gabriel A. Peixoto (SBN 306758)
2  LUBIN OLSON & NIEWIADOMSKI LLP
   The Transamerica Pyramid
3  600 Montgomery Street, 14th Floor
   San Francisco, California 94111
4  Telephone:    (415) 981-0550
   Facsimile:    (415) 981-4343
5  ecirangle@lubinolson.com
   gpeixoto@lubinolson.com
6
   Attorneys for Defendant
7  FOOD FOR LIFE BAKING CO., INC.

8

9                    UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

12 | MOLLY BROWN and ADINA RINGLER, as | Case No. 3:21-cv-10054-TLT
   | individuals, on behalf of themselves, the |
13 | general public, and those similarly situated, | **FOOD FOR LIFE BAKING CO., INC.'S**
   |                                            | **MOTION TO DISMISS PLAINTIFFS'**
14 |                    Plaintiffs,            | **FIRST AMENDED CLASS ACTION**
   |                                            | **COMPLAINT**
15 |        v.                                  |
   |                                            | **(FED. R. CIV. P. 12(b)(1) & 12(b)(6))**
16 | FOOD FOR LIFE BAKING CO., INC.,            |
   |                                            | Hearing Date:   February 7, 2023
17 |                    Defendant.             | Time:           2:00 PM
   |                                            | Judge:          Hon. Trina L. Thompson
18 |                                            | Courtroom:      Courtroom 9

19                                               Amended Complaint

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................................3

II.  BACKGROUND AND PROCEDURAL HISTORY .............................................4

    A.   Protein and Human Dietary Needs ...........................................................4

    B.   Food For Life's Products and Protein Reporting ......................................5

    C.   Federal Law Regulates Protein Content Information on Food Labels ......6

    D.   Procedural History....................................................................................7

III. PLAINTIFFS' CLAIM THAT FFL's NITROGEN-CONTENT REPORTING WAS MISLEADING IS EXPRESSLY PREEMPTED ........................................8

    A.   The FDCA Permits Nitrogen-Content Reporting on the Front Label ......9

    B.   The FDA Has Affirmatively Found That Nitrogen-Content Protein Reporting Without Percent Daily Value is *Not* Misleading Under the Circumstances Here ................................................................................11

IV.  ALL OF PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE PLAINTIFFS CANNOT ALLEGE RELIANCE ................................................12

V.   PLAINTIFFS' CLAIM THAT FFL's OMISSION OF %DV WAS UNLAWFUL IS ALSO IMPLIEDLY PREEMPTED.............................................................13

VI.  PLAINTIFFS' CLAIMS REGARDING FFL's ENGLISH MUFFINS FAIL FOR MULTIPLE ADDITIONAL REASONS .....................................................15

VII. PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS ......................17

    A.   Plaintiffs lack standing for products they did not purchase ...................17

    B.   Plaintiffs lack standing to pursue injunctive relief.................................18

    C.   Plaintiffs' unjust enrichment claim fails ...............................................19

    D.   Plaintiffs' request for equitable relief fails............................................20

    E.   Plaintiffs' request for punitive damages fails........................................21

VIII. CONCLUSION ..................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amans v. Tesla, Inc.*,
No. 21-cv-3577, 2022 WL 2952474 (N.D. Cal. July 26, 2022)............................................. 20

*Astiana v. Hain Celestial Grp. Inc.*,
783 F.3d 753 (9th Cir. 2015).................................................................................................. 20

*Borchenko v. L'Oreal USA, Inc.*,
389 F. Supp. 3d 769 (C.D. Cal. 2019).................................................................................... 15

*Bruton v. Gerber Prod. Co.*,
No. 12-cv-2412, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ............................................. 13

*Buckman Co. v. Plaintiff's Legal Comm.*,
531 U.S. 341 (2001) ........................................................................................................ 3, 14

*Cepelak v. HP Inc.*,
No. 20-cv-2450, 2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) .......................................... 20

*Chong v. Kind LLC*,
585 F. Supp. 3d 1215 (N.D. Cal. 2022) ......................................................... 4, 7, 10, 14, 15

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018).......................................................................................... 18, 19

*Durnford v. MusclePharm Corp.*,
907 F.3d 595 (9th Cir. 2018).................................................................................................. 10

*Elgindy v. AGA Serv. Co.*,
No. 20-cv-6304, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021)........................................... 21

*Goldsmith v. Allergan, Inc.*,
No. 09-cv-7088, 2011 WL 147714 (C.D. Cal. Jan. 13, 2011) .............................................. 15

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
No. 19-md-2918, 2021 WL 4306018 (N.D. Cal. Sept. 22, 2021).......................................... 20

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018).................................................................................................... 9

*Jackson v. Gen. Mills, Inc.*,
No. 18-cv-2634, 2019 WL 4599845 (S.D. Cal. Sept. 23, 2019)............................................ 18

*Jackson v. Gen. Mills, Inc.*,
     No. 18-cv-2634, 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ............................................. 19

*Kearns v. Ford Motor Co.*,
     567 F.3d 1120 (9th Cir. 2009) ...................................................................................................... 16

*Kwikset Corp. v. Superior Court*,
     51 Cal. 4th 310 (2011) ................................................................................................................... 16

*Lanovaz v. Twinings N. Am., Inc.*,
     726 Fed. Appx. 590 (9th Cir. 2018) ............................................................................................. 19

*Lorentzen v. Kroger Co.*,
     532 F. Supp. 3d 901 (C.D. Cal. 2021) ................................................................................... 17, 18

*Lozano v. Bowmar Nutrition LLC*,
     No. 21-cv-4296, 2021 WL 4459660 (C.D. Cal. Aug. 19, 2021) ............................................. 18

*Martin v. Tradewinds Beverage Co.*,
     No. 16-cv-9249, 2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) ...................................... 21, 22

*Mee v. IA Nutrition, Inc.*,
     No. 14-cv-5006, 2015 WL 2251303 (N.D. Cal. May 13, 2015) ............................................... 9

*Monsanto Co. v. Geertson Seed Farms*,
     561 U.S. 139 (2010) ........................................................................................................................ 16

*Nacarino v. Kashi Co.*,
     584 F. Supp. 3d 806 (N.D. Cal. 2022) ................................................................................... 8, 10

*Padilla v. Whitewave Foods Co.*,
     No. LA-cv-1809327, 2019 WL 4640399 (C.D. Cal. July 26, 2019) ....................................... 18

*Perez v. Nidek Co.*,
     711 F.3d 1109 (9th Cir. 2013) ...................................................................................................... 14

*Phan v. Sargento Foods, Inc.*,
     No. 20-cv-9251, 2021 WL 2224260 (N.D. Cal. June 2, 2021) ................................................. 20

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
     No. 19-cv-3613, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ...................................... 21, 22

*Robinson v. J.M. Smucker Co.*,
     No. 18-cv-4654, 2019 WL 2029069 (N.D. Cal. May 8, 2019) ................................................ 21

*Roffman v. Perfect Bar, LLC*,
     No. 22-cv-2479, 2022 WL 4021714 (N.D. Cal., Sept. 2, 2022) ............................................. 10

*Salazar v. Honest Tea, Inc.*,
     74 F. Supp. 3d 1304 (E.D. Cal. 2014) .......................................................................................... 9

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

*Shaeffer v. Califia Farms, LLC,*
    44 Cal. App. 5th 1125 (2020) ................................................................................ 16

*Silver v. Stripe Inc.,*
    No. 20-cv-8196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ............................. 20

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020) ................................................................................ 20

*Stengel v. Medtronic, Inc.,*
    704 F.3d 1224 (9th Cir. 2013) .............................................................................. 14

*Vess v. Ciba–Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) .............................................................................. 16

**Statutes**

21 U.S.C. § 337(a) ..................................................................................................... 14

21 U.S.C. § 343-1(a)(5) ..................................................................................... 3, 9, 12

21 U.S.C. § 343(q)(1)(d) ............................................................................................. 6

**Other Authorities**

21 C.F.R. § 101.9 ............................................................................................. *passim*

21 C.F.R. § 101.13 ........................................................................................... *passim*

56 Fed. Reg. 60366-01, 1991 WL 250813 (Nov. 27, 1991) ..................................... 5, 7

58 Fed. Reg. 2079-01, 1993 WL 1537 (Jan. 6, 1993) ...................................... *passim*

58 Fed. Reg. 2302-01, 1993 WL 1540 (Jan. 6, 1993) ......................................... 3, 12

Federal Rule of Civil Procedure 8 ................................................................................ 1

Federal Rule of Civil Procedure 9(b) ............................................................. 1, 2, 4, 16

Federal Rule of Civil Procedure 12(b)(1) ..................................................................... 1

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 1

U.S. Food & Drug Admin., *Industry Resources on the Changes to the Nutrition
    Facts Label*, Jan. 11, 2022 (https://www.fda.gov/food/food-labeling-
    nutrition/industry-resources-changes-nutrition-facts-label) ................................... 9

## <u>NOTICE OF MOTION AND MOTION</u>

**PLEASE TAKE NOTICE THAT** on February 7, 2023, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 9 (Floor 19), of the Honorable Trina L. Thompson, located in the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Food for Life Baking Co., Inc. ("FFL" or "Defendant") will and hereby does move this Court for entry of an order dismissing the First Amended Class Action Complaint filed in this action on October 7, 2022 (Dkt. No. 26) by Plaintiffs Molly Brown and Adina Ringler (collectively, "Plaintiffs").

This Motion is made pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6), and federal express and implied preemption. Because Plaintiffs have already amended and still cannot state any cognizable claim as a matter of law, any amendment would be futile, and this action should be dismissed with prejudice.

This Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, and supporting Request for Judicial Notice and Declaration of E. Cirangle, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiffs' claims regarding statements made about protein on the front label are expressly preempted by the Food, Drug, and Cosmetic Act ("FDCA").

2. Whether Plaintiffs' fail to state a claim because Plaintiffs have not pled reliance.

3. Whether Plaintiffs' unlawful claims are impliedly preempted by the FDCA.

4. Whether Plaintiffs' claims regarding Defendant's English Muffins fail under Rule 9(b), and because Plaintiffs do not plead reliance on the front-label statement, and because the statement "Complete Protein" is not a nutrient content claim and thus Defendant was not required to include the percent daily value of protein on the nutrition facts panel for those products.

5. Whether Plaintiffs lack standing to pursue claims related to at least 15 products that they did not purchase because Plaintiffs suffered no economic injury as to these unpurchased products.

6. Whether Plaintiffs lack standing to pursue injunctive relief because they do not sufficiently allege a threat of future harm.

7. Whether Plaintiffs' claim for unjust enrichment fails because no independent cause of action for unjust enrichments exists in California.

8. Whether Plaintiffs' requests for punitive damages fails because Plaintiffs do not allege oppression, fraud, or malice by an officer, director, or managing agent of Defendant.

9. Whether Plaintiffs' request for equitable relief fails because they have not established that their legal remedies are inadequate.

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.**   <u>**INTRODUCTION**</u>

3

Plaintiffs Molly Brown's and Adina Ringler's ("Plaintiffs") claims concern Food for Life

4

Baking Co., Inc.'s ("FFL" or "Defendant") accurate statements on the front label of certain of its

5

products regarding the quantity of protein in such products. Although admittedly accurate,

6

Plaintiffs claim FFL's front-label protein statements are misleading and unlawful because they do

7

not account for digestibility ("front-label claims"), and because product packaging omits a

8

statement of a percent daily value in the nutrition facts panel ("omission claims") and therefore

9

they were misled about the quality of the protein in the products.

10

Plaintiffs' claims fail as a matter of law and should be dismissed. Plaintiffs' front-label

11

claims are expressly preempted under the Food, Drug, and Cosmetic Act ("FDCA") because the

12

FDA regulations allow FFL to make quantitative claims on the front of its packaging (21 C.F.R. §

13

101.9(c)(7)(i)) and thus Plaintiffs' claims are not identical to the federal requirements. 21 U.S.C. §

14

343-1(a)(5) (the FDCA preempts state causes of action "not identical to" the federal

15

requirements). Plaintiffs' claim that FFL's omission of percent daily value in the nutrition facts

16

panel rendered FFL's front label reporting misleading fails because such omission does not change

17

the fact that the FDA regulations expressly allow FFL to make quantitative claims on its front

18

labels, and because the FDCA regulations provide that a protein quantity statement in the absence

19

of a percent daily value is ***not*** misleading unless the protein quality is far below what is alleged

20

here. 21 C.F.R. § 101.9(c)(7); 58 Fed. Reg. 2079-01, at 2101-02, 1993 WL 1537 (Jan. 6, 1993).

21

Furthermore, Plaintiffs' claims all fail because Plaintiffs have not properly pled reliance,

22

which is required for all of their claims, nor can they. Plaintiffs' claims are based upon FDA

23

regulations that expressly state protein quantity statements such as FFL's here "convey[] no

24

implied characterization of the level of the nutrient." 58 Fed. Reg. 2302-01, at 2310, 1993 WL

25

1540 (Jan. 6, 1993); 21 C.F.R. § 101.13(i)(3). Yet Plaintiffs' reliance allegations depend upon the

26

opposite—that FFL's protein quantity statements ***did*** imply the level of the nutrient and that

27

Plaintiffs relied upon those implications.

28

Plaintiffs' unlawful claims are also impliedly preempted under *Buckman Co. v. Plaintiff's*

*Legal Comm.*, 531 U.S. 341 (2001). Plaintiffs seek an end-run around the FDCA's prohibition on private-rights-of-action by suing for a technical violation of the FDA regulations under California state law. But Plaintiffs' claims are ultimately dependent on the existence of federal law and do not fit within the narrow exception for such claims to be able to proceed without being preempted. Plaintiffs' claims also fail on other grounds further warranting their dismissal, including failure to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims, lack of standing to pursue injunctive relief or claims for unpurchased products, as well as other reasons.

This case is one of a slew of similar consumer class actions filed in the Northern District of California regarding protein claims, each case based on the same legal theory. Before this case was transferred to this Court, it was assigned to Chief District Judge Richard Seeborg. The parties agreed to stay this case because Judge Seeborg had ruled on and dismissed another protein-claim case. In *Chong v. Kind LLC*, No. 3:21-cv-4528, Judge Seeborg dismissed that case on express and implied preemption grounds. 585 F. Supp. 3d 1215, 1217-19 (N.D. Cal. 2022). Plaintiffs' counsel appealed the dismissal order and because that appeal would impact resolution of this lawsuit, the parties agreed to stay this case. But immediately after this case was transferred to this Court, Plaintiffs' counsel withdrew from the stay hoping that this Court would disagree with Judge Seeborg. FFL urges this Court not to depart from Judge Seeborg's ruling in *Chong*, which equally applies to this case.[1]

For these and other reasons below, the Court should dismiss Plaintiffs' First Amended Class Action Complaint ("FAC") with prejudice.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Protein and Human Dietary Needs

Consumption of protein is essential for the growth and health of the human body. *See* 58 Fed. Reg. 2079-01, § G, 1993 WL 1537 (Jan. 6, 1993). Proteins consist of strings of amino acids. There are 20 amino acids commonly found in proteins, nine of which are not produced by the

---

[1] FFL also raises additional arguments not raised in *Chong* that further support dismissing this entire case.

human body. These nine amino acids are referred to as **essential** amino acids because humans

must get them through diet and the human body requires a constant supply of them to synthesize

body proteins. *See generally* 56 Fed. Reg. 60366-01, § B, 1991 WL 250813 (Nov. 27, 1991). If a

protein contains all nine essential amino acids, it's called a **complete protein**.

Relatedly, the idea of **protein quality** is based on the nutritional concept that food proteins

contain different measures of the "content, proportion, and availability of essential amino acids."

56 Fed. Reg. 60366-01, § B, *see also* Fed. Reg. 2079-01, § G. Metrics used to rank sources of

protein quality (e.g., PDCAAS, *see infra* Sec. II.C) tend to score proteins derived from animals

higher than proteins derived from plants because of the high digestibility and distribution of

essential amino acids found in proteins derived from animals; however, like proteins derived from

animals, proteins derived from plants can also contain all nine essential amino acids. As such,

human dietary requirements for protein intake can be met based on an entirely plant-based diet

(e.g., veganism). Additionally, because proteins derived from plants can be complementary in

amino acid profiles, as long as one consumes a variety of foods throughout the day, adequate

amounts of essential amino acids can be consumed—i.e., it is not necessary to eat all nine essential

amino acids at the same meal for amino acids to be nutritionally usable.

The proteins in foods derived from animals tend to be absorbed more easily than proteins

derived from plants. But the difference in absorption is only about 10 to 20 percent lower from

plants than from animals. As a result, this difference in absorption rate would only matter to diets

that barely met daily protein intake requirements. For adults in the United States this is generally

not an issue (*see* Fed. Reg. 2079-01, 2102) because protein consumption usually exceeds

nutritional requirements.

### B.   Food For Life's Products and Protein Reporting

Defendant FFL is a Corona, California-based family-owned manufacturer of baked goods.

The company was founded over five decades ago and prides itself on providing consumers with

high-quality, nutritious foods. FFL has produced and marketed a variety of baked goods, including

cereals, waffles, hot dog and burger buns, pasta, and muffins, under the "Ezkiel 4:9" brand (see

list of products at issue in Exhibit B to FAC, collectively "Products"). Many of FFL's products are

diet-specific, such as yeast-free, gluten-free, vegan and diabetic-friendly, and are made by combining different plant-based proteins to provide consumers with a complete protein. All of FFL's products contain the required Nutrition Facts Panel (*see infra* Sec. II.C). On a handful of its products, FFL placed statements regarding the quantity of protein on the front of its labels, such as "7g PLANT-BASED PROTEIN PER SERVING."

Plaintiffs do not allege FFL's Products do not contain the stated level of protein; rather Plaintiffs complain that FFL's reporting of the protein contained in its Products on the labels is misleading because FFL reports the **quantity** of protein, but not the **quality** of the protein.

### C.       Federal Law Regulates Protein Content Information on Food Labels

The FDCA and the U.S. Food and Drug Administration's ("FDA") implementing regulations regulate nutrient content information on food product labels. The FDCA requires manufacturers of food products to include a "Nutrition Facts Panel" ("NFP") on food products. The content of the NFP is regulated by 21 C.F.R. § 101.9. The NFP must state the amount of "total protein" per serving. 21 U.S.C. § 343(q)(1)(d); 21 C.F.R. § 101.9(c)(7).

Section 101.9(c)(7) provides the method for calculation of total protein for inclusion on the NFP. That method calculates the quantity (number of grams) of protein per serving using a referenced international standard. It provides that the total amount of protein be "calculated on the basis of the factor 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International,' except when official AOAC procedures described in this paragraph (c)(7) require a specific factor other than 6.25, that specific factor shall be used." 21 C.F.R. § 101.9(c)(7). This "method of analysis" for measuring quantity of protein is known as the **nitrogen-content method**.

The FDCA does not generally require a manufacturer to also calculate the **percent of daily value** ("%DV") for protein per serving for the NFP. 21 C.F.R. §§ 101.9(c)(7)(i). That is due to cost concerns regarding such calculation. *See* Fed. Reg. 2079-01, 2102, 2104. The FDA also recognized that protein deficiency is not common in the United States (*id*. at 2101-02), and that the amount of protein from a particular source that is utilized by the human body varies depending upon what other foods are consumed (*see generally id*. at 2105 ("FDA agrees that use of the

1    PDCAAS does not indicate the value of individual proteins consumed as part of a mixed diet.")).

2    In order to calculate percent daily value, the "PDCAAS method" must be used. 21 C.F.R. §

3    101.9(c)(7)(i). The PDCAAS method is a "protein digestibility-corrected amino acid score," which

4    uses an amino acid scoring pattern based on human dietary requirements and measures the amino

5    acid composition (quality) and digestibility of protein. 58 Fed. Reg. 2079-01, 2105, 56 Fed. Reg.

6    60366-01, § B. The highest PDCAAS value that a protein can achieve is 1.0, indicating that the

7    protein will provide 100% (or more) of all the amino acids required in the human diet. 21 C.F.R. §

8    101.9(c)(7)(ii). Unlike the nitrogen-content method, which provides a *quantitative* measure of the

9    total amount of protein in grams per serving, the PDCAAS method assesses "protein *quality* of

10   foods." 58 Fed. Reg. 2079-01, 2103.

11          The FDCA allows manufacturers to take nutrient information required in the NFP and

12   place it elsewhere on a food label. 21 C.F.R. §§ 101.13(b)-(c). These statements are referred to as

13   **nutrient content claims**. *Id.* Section 101.13 regulates nutrient content claims. 21 CFR § 101.13. If

14   a manufacturer makes a nutrient content claim its accuracy is determined by the same standards

15   applicable to NFP statements. 21 C.F.R. § 101.13(o).

16          If a manufacturer makes a nutrient content claim outside of the NFP, the FDCA then

17   requires that the NFP contain the %DV. 21 C.F.R. §§ 101.9(c)(7)(i). Thus, the FDA doesn't

18   require manufacturers to incur the expense of PDCAAS testing for the mandatory NFP but has

19   determined that if a manufacturer makes a voluntary statement about protein content outside of the

20   NFP, it should be required to undertake such expense. 21 C.F.R. § 101.9(c)(7)(i).

21          **D.    Procedural History**

22          This case was initially assigned to Judge Seeborg. On February 15, 2022, Judge Seeborg

23   granted defendant Defendant's motion to dismiss in *Chong v. Kind LLC* (No. 21-cv-4528), another

24   protein claim case, and entered judgment in favor of Kind against plaintiffs. 585 F. Supp. 3d at

25   1217-19 (finding plaintiffs' legal claims were expressly and impliedly preempted). Plaintiffs'

26   counsel in *Chong* filed a notice of appeal. No. 21-cv-4528, Dkt. No. 44; *see also* Appeal No. 22-

27   15368. Because the parties recognized the claims and issues in this case were similar to those in

28   *Chong*, the parties filed a stipulation and order requesting that Judge Seeborg stay the matter,

which Judge Seeborg granted on March 4, 2022. *See* No. 21-cv-4528, Dkt. Nos. 20, 21. However, even though the *Chong* appeal was still pending before the Ninth Circuit, immediately after this case was transferred to this Court, Plaintiffs withdrew their agreement to the stay the matter, indicating that they hoped a new Judge would disagree with Judge Seeborg.[2] [3]

III.   **PLAINTIFFS' CLAIM THAT FFL's NITROGEN-CONTENT REPORTING WAS MISLEADING IS EXPRESSLY PREEMPTED**

Plaintiffs allege FFL's front-of-label advertising for the Products is misleading because it states an amount of grams of protein per serving (e.g., "7g PLANT-BASED PROTEIN PER SERVING") calculated based on the nitrogen-content method (which calculates quantity) rather than the PDCAAS method, which adjusts for quality. FAC at ¶¶ 9, 23. Plaintiffs allege that FFL's nitrogen-content reporting misleadingly conveyed that the protein in FFL's products was of perfect quality and therefore all of the grams of protein stated on the front-label of the Products went towards Plaintiffs' %DV requirements for protein. FAC at ¶¶ 6-9, 20-24, *see also* FAC, Ex. B. Plaintiffs further allege that even if the front-label claim was not misleading standing alone, FFL's failure to include the %DV in its NFP rendered the front-label claims misleading. *Id.*

Plaintiffs are consumers who allegedly purchased the Products based upon their belief that FFL's protein claims conveyed information regarding the quality of the protein and paid "a price premium for the products." FAC at ¶ 10. Plaintiffs bring their claims under state consumer protection (UCL, CLRA, FAL) and tort law (fraud, deceit and/or misrepresentation) and seek to represent California and nationwide classes. FAC at pp. 22-34.

The FDCA preempts all state law causes of action that are "not identical to" the federal

---

[2] After seeking three extensions, plaintiffs opening brief in the *Chong* appeal was due on October 28, 2022. But on that date, rather than file an opening brief, Plaintiffs' counsel moved to dismiss the appeal, and, that same day, filed a new class action complaint against Kind asserting the same claims as the *Chong* complaint. *Guerra v. Kind, LLC*, 22-cv-6654 (currently assigned to Magistrate Judge Alex G. Tse). Kind has moved to oppose dismissal of the *Chong* appeal.

[3] Since April 2020, Plaintiffs' counsel has filed at least eighteen consumer class actions in the Northern District of California based on the same legal theory as this case. In addition to the *Chong* appeal, two other protein claim cases are also currently on appeal before the Ninth Circuit. *See Nacarino v. Kashi Co.*, No. 3:21-cv-7036; *Brown v. Kellogg Co.*, No. 3:21-cv-7388; consolidated Appeal No. 22-15377.

requirements. 21. U.S.C. § 343-1(a)(5), *see Hawkins v. Kroger Co.*, 906 F.3d 763, 769-70 (9th Cir. 2018). As Plaintiffs' claims that FFL's nitrogen-content reporting misled them are not identical to the federal requirements their claims are expressly preempted.

**A.**     **The FDCA Permits Nitrogen-Content Reporting on the Front Label**

As Plaintiffs admit, the regulations allow FFL to use the nitrogen-content method to calculate protein for reporting in the NFP. *See* 21 C.F.R. § 101.9(c)(7) (allowing AOAC's nitrogen-content method); 21 C.F.R. § 101.9(g) (determining compliance through use of AOAC methods). But what Plaintiffs fail to acknowledge is that the FDCA ***also*** allows the use of the nitrogen-content method in front-label claims. FFL's compliance with the FDCA in regard to its front-label protein claim is determined by ***the very same methods*** set forth in to determine compliance in the NFP. 21 C.F.R. § 101.13(o) ("compliance with requirements for nutrient content claims . . . will be determined using the analytical methodology prescribed for determining compliance with nutrition labeling in § 101.9"). *See Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1310-11 (E.D. Cal. 2014); *see also* U.S. Food & Drug Admin., *Industry Resources on the Changes to the Nutrition Facts Label*, Jan. 11, 2022 (https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-nutrition-facts-label) (*see* Ex. 1 to Declaration of E. Cirangle at pp. 23-24) (explaining that two methods—nitrogen-content method or PDCAAS method—may be used for protein nutrient content claims).

As such, Plaintiffs' front-label claims seek to use state law to impose requirements not provided for by the FDA, i.e., that FFL must use the PDCAAS method for front-label protein claims, violating the FDCA's preemption provision. 21 U.S.C. § 343-1(a)(5); *see also Mee v. IA Nutrition, Inc.*, No. 14-cv-5006, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2015) (Chesney, J.) ("[W]here, as here, an FDA regulation provides that the question of compliance must be determined using the method specified therein, a state law claim that seeks to establish a violation of such regulation by a different methodology is preempted").

Plaintiffs' claim that FFL's omission of %DV transformed FFL's front-label nitrogen-content reporting into a misleading statement does not change the result. When the protein content doesn't appear anywhere else on the label, the FDCA allows nitrogen-content reporting within the

NFP without the %DV. 21 C.F.R. § 101.9(c)(7)(i). Thus, the FDA recognizes that the nitrogen-content standing alone is not misleading. *See e.g.*, *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 602 (9th Cir. 2018) (as federal regulations "allow[] the use of nitrogen content as a proxy for protein" nitrogen content reporting cannot violate the FDCA's prohibition on "false or misleading" statements); *Roffman v. Perfect Bar, LLC*, No. 22-cv-2479, 2022 WL 4021714, at *7 (N.D. Cal., Sept. 2, 2022) (Corley, J.) ("Since the regulations allow a nitrogen-method figure on the nutrition facts panel without any other information, Plaintiffs' claim that the nitrogen-method figure on the front label without any other information is misleading conflicts with and is not identical to FDA regulations and is thus preempted.").[4]

Other courts in this District have dismissed claims premised on allegations that nutrient content claims based on the nitrogen-content method are misleading or otherwise unlawful because they were expressly preempted. *See e.g.*, *Nacarino v. Kashi Co.*, 584 F. Supp. 3d 806, 809-11 (N.D. Cal. 2022) (Chhabria, J.) ("Because Kashi's statements are expressly permitted by the FDCA, the plaintiffs' state law claims are preempted and the motion to dismiss is granted."); *Chong*, 585 F. Supp. 3d at 1217-19 (Seeborg, J.) ("a correct reading of the regulations establishes that producers may state grams of protein even outside the Nutrition Facts panel calculated by the nitrogen method, and without adjustment for digestibility. The motion to dismiss the claims based on front-of-packaging statements must be granted. As in *Nacarino*, because the defect in the case lies in the legal theory, not the factual allegations, the dismissal will be without leave to amend."). This Court should join those courts in finding that Plaintiffs' front-label claims are preempted and dismiss those claims without leave to amend.

---

[4] The FDCA's requirement that the use of a nitrogen-content statement outside of the NFP triggers an obligation to place the %DV in the NFP is not because the FDA found that being outside of the NFP magically turns a statement the FDA has found not misleading into a misleading one. Rather it is because the FDA did not want to impose the cost of PDCAAS testing on every manufacturer and chose to only impose such cost on those who make such statements outside of the NFP. *See* Fed. Reg. 2079-01, 2102, 2104 ("FDA wishes to clarify that declaration of the percent DRV for protein (which uses the PDCAAS method) is voluntary for foods intended for adults and children 4 or more years of age unless a protein claim is made for the product. Therefore, for this age group, the burden and expense of the PDCAAS method are voluntarily assumed by the manufacturer.").

### B.   The FDA Has Affirmatively Found That Nitrogen-Content Protein Reporting Without Percent Daily Value is *Not* Misleading Under the Circumstances Here

In addition to the fact that the FDA's allowance of the nitrogen-content method standing alone establishes such method is not misleading, the FDA has gone even further and expressly found that nitrogen-content reporting without %DV is ***not*** misleading unless the protein quality is significantly lower than what is alleged here.

The FDA has determined that nitrogen-content reporting in the absence of %DV is not misleading ***unless the protein is less than 20% digestible***, which is not alleged here. *See* FAC at ¶¶ 6, 34 (alleging FFL's products are 40-50% digestible). In evaluating various comments to the current rule provided in § 101.9(c)(7) allowing nitrogen-content reporting in the NFP without %DV information, the FDA recognized that "[i]nformation on protein quantity alone can be misleading on foods that are of low protein quality." 58 Fed. Reg. 2079-01, 2101. That is because some proteins are "incomplete," meaning that they do not contain all essential amino acids. *Id*. The FDA concluded that "nutrition labeling must allow consumers to readily identify foods with particularly low quality protein to prevent them from being misled by information on only the amount of protein present." *Id.* Thus, the FDA concluded that "nutrition labeling must inform consumers when the quality of the protein is below minimum specified levels." *Id.* at 2101-02. The FDA specified such levels—it specified that nitrogen-content reporting in adult food could be misleading where the protein quality (PDCAAS) was less than 20%. *Id.* In such circumstances, the FDCA requires that food labels must either state "not a significant source of protein" or disclose the "Percent Daily Value." 21 C.F.R. § 101.9(c)(7).[5]

In determining nitrogen-content numbers standing alone would only be misleading where the protein quality was less than 20%, the FDA noted "protein deficiency is not common in the United States." 58 Fed. Reg. 2079-01, 2101-02. Furthermore, because products are not eaten in a vacuum—the various foods eaten throughout the day can contribute amino acids missing from one

---

[5] Indeed, the FDA's concern was whether food was a complete protein, which the Products are, but in any event, Plaintiffs allege the Products contain 40-50% useable protein. FAC at ¶ 34.

1   food, in turn making more of the protein useful to the human body (*see generally id.* at 2105).

2   Thus, the FDA has concluded that nitrogen-content reporting in the absence of %DV is ***not***

3   ***misleading*** unless the protein digestibility is much lower than what is alleged here. As such, this

4   further supports a finding that Plaintiffs' claims based upon allegations that FFL's nitrogen-

5   content reporting in the absence of %DV are misleading are "not identical to" the federal

6   requirements and are preempted. 21 U.S.C. § 343-1(a)(5).

7   Accordingly, as the FDCA allows the use of nitrogen-content reporting on the front label

8   and has even affirmatively found the absence of %DV does not render such reporting misleading,

9   Plaintiffs' claims based upon FFL's use of the nitrogen-content method are "not identical to" the

10   federal requirements and are therefore expressly preempted. *Id.*

11   **IV.    ALL OF PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE
            PLAINTIFFS CANNOT ALLEGE RELIANCE**

12

13   The foundation of all of Plaintiffs' claims is that FFL's protein reporting using the

14   nitrogen-content method and omission of the %DV in the NFP misled them into believing that all

15   of the reported quantity of protein also conveyed perfect quality. FAC at ¶¶ 6-9. Plaintiffs allege

16   that, in the absence of information regarding the %DV for the protein, FFL's protein ***quantity***

17   figures conveyed the ***quality*** of the protein. *See, e.g.*, FAC at ¶ 65 ("When a manufacturer does not

18   provide a %DV for protein, [Plaintiff] can only go off the stated grams of protein, and ***she***

19   ***assumes that all of those disclosed grams are in a form her body can use as a protein***")

20   (emphasis added); ¶ 70 ([Plaintiff] "believed in the truth of ***each representation, i.e., that the***

21   ***product would actually provide her the specific amount of protein claimed on the front label in***

22   ***a form her body could utilize as protein***") (emphasis added). Plaintiffs' claim that FFL's front-

23   label protein quantity statements misled them in regards to the protein quality in violation of 21

24   C.F.R § 101.13(i)(3), which prohibits false and misleading statements on front-label claims.

25   But that very regulation that Plaintiffs rely upon forecloses Plaintiffs' claim. Section

26   101.13(i)(3) provides that claims such as "5 grams of fat" do "***not in any way implicitly***

27   ***characterize the level of the nutrient in the food***." 21 C.F.R § 101.13(i)(3) (emphasis added); *see*

28   *also* 58 Fed. Reg. 2302-01, 2310 (stating that a nutrient content claim outside of the NFP setting

1  forth "an amount" such as "5 grams of fat," is "a simple statement of amount that, by itself,

2  *conveys no implied characterization of the level of the nutrient*") (emphasis added).

3         Thus, Plaintiffs base their claims upon allegations that FFL's front-label protein quantity

4  statement conveyed that the Products' protein was of perfect (100%) quality, but the FDA

5  regulations they rely upon provide the opposite—that this type of statement does not convey

6  *anything* about the quality of the protein.

7         This same defect also renders Plaintiffs' "unlawful" claim under the UCL defective as a

8  matter of law. Plaintiffs' "unlawful" claim is predicated upon the alleged misleading nature of

9  FFL's protein reporting. FAC at ¶¶ 83, 87, 88. As such, Plaintiffs must plead reliance as an

10 element of their unlawful claim. *See, e.g.*, *Bruton v. Gerber Prod. Co.*, No. 12-cv-2412, 2014 WL

11 172111, at *9 (N.D. Cal. Jan. 15, 2014) ("[T]he Court takes this opportunity to reiterate its

12 position, stated in numerous other food misbranding cases, that actual reliance and injury are

13 required to establish statutory standing under the UCL's unlawful prong whenever the underlying

14 alleged misconduct is deceptive or fraudulent.").

15        But Plaintiffs cannot plead they relied upon the front-label claims conveying information

16 regarding the quality of the protein as that allegation is belied by Plaintiffs' reliance upon a

17 regulation that says no such information was conveyed. Accordingly, all of Plaintiffs' claims fail

18 because Plaintiffs have failed to adequately or plausibly plead the required reliance element.[6]

19 **V.    PLAINTIFFS' CLAIM THAT FFL's OMISSION OF %DV WAS UNLAWFUL IS
20         ALSO IMPLIEDLY PREEMPTED**

21        In the event the Court does not find Plaintiffs' unlawful claim fails as a matter of law on

22 the grounds of reliance, such claim must be dismissed for the further reason that this claim is

23 impliedly preempted because Plaintiffs seek private enforcement of the FDCA, which is not

24 allowed.

25        Plaintiffs' claims premised on FFL's alleged failure to include the %DV on the NFP of the

26 _____

27 [6] Additionally, Plaintiffs rely upon 21 C.F.R. § 101.9(c)(7) to support their claims, but that section
   only finds nitrogen-content reporting to be misleading when the quality of the protein is much
28 lower than is alleged here. *See*, Section III.B (2), *supra*. This raises another defect in Plaintiffs'
   reliance pleading.

Products should be dismissed as impliedly preempted under *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341 (2001). A consumer has no private right of action to enforce the FDCA (21 U.S.C. § 337(a) ("all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.")). Consistent with this restriction, under *Buckman*, a plaintiff's private claims that "exist solely by virtue of the FDCA" are preempted. 531 U.S. at 353. In order to avoid preemption, state-law claims must "rely[ ] on traditional state tort law which had predated the federal enactments in question." *Chong*, 585 F. Supp. 3d at 1219-20 (quoting *Buckman*, 531 U.S. at 353); *see also Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (describing a "narrow gap" through which a state-law claim can avoid preemption by the FDCA: "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).") (citation and internal quotation marks omitted)).

Here, Plaintiffs' %DV omission-based claims fail under this standard because they are predicated on FFL's alleged violation of the FDCA (via the Sherman Food Drug & Cosmetic Law ("Sherman Law")). Specifically, Plaintiffs' omission claims are premised on FFL's alleged failure to include the %DV in the NFP, which Plaintiffs claim is a violation of an FDA regulations. 21 C.F.R. § 101.9(c)(7). Put another way, Plaintiffs' state law claims *exist solely because* of conduct that allegedly violates the FDA regulations. But Plaintiffs are prohibited from suing to enforce an alleged violation of the FDA regulations, which is precisely what they seek to do here.

Plaintiffs seek an end-run around the issue of preemption by alleging that FFL's labeling violates the UCL, CLRA, and FAL, and constitutes fraud. But each of Plaintiffs' state-law claims are predicated on an alleged technical violation of the Sherman Law, which is California's statutory adoption of the FDA regulations and expressly references and incorporates the FDCA.[7]

---

[7] To be sure, there is presumption against federal preemption of state-law claims concerning areas of law States have traditionally occupied. *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013). But the Sherman Law, upon which Plaintiffs' claims are based, is statutory, non-traditional state-tort law based on California's adoption of the FDCA and its regulations.

As such, Plaintiffs' state-law claims rely on and are derivative of an alleged violation of the FDCA. Other courts have considered whether claims premised on alleged violations of the Sherman Law can avoid preemption and found that they cannot. *See e.g.*, *Chong*, 585 F. Supp. 3d at 1219 ("Plaintiffs here are not pursuing pre-existing, traditional, state tort law claims, rather they rely on California's Sherman Law, which post-dates and is entirely dependent upon the FDCA, in that it expressly adopts the FDCA and regulations as state law. . . . As such, plaintiffs' claims based on the omission of the % DV in some of KIND's product labels are preempted."); *see also Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 774 (C.D. Cal. 2019) ("In sum, Plaintiff's UCL claim is impliedly preempted by federal law because it exists solely by virtue of the FDCA and law which references the FDCA, seeks to enforce provisions of the FDCA, and conflicts with the FDCA discretionary enforcement process. Thus, Plaintiff is suing not only for conduct that violates the FDCA but 'because the conduct violates the FDCA.'") (citation omitted); *Goldsmith v. Allergan, Inc.*, No. 09-cv-7088, 2011 WL 147714, at *8 (C.D. Cal. Jan. 13, 2011) ("No matter how artfully the Complaint is pleaded in attempting to enforce the FDCA, Plaintiff cannot enforce the FDCA's off-label advertising provisions simply by calling it a violation of the UCL."). This Court should follow suit.[8]

## VI.  PLAINTIFFS' CLAIMS REGARDING FFL's ENGLISH MUFFINS FAIL FOR MULTIPLE ADDITIONAL REASONS

Plaintiffs' claims are all based upon their assertion that FFL's statements regarding the protein quantity in their products (e.g., "7g PLANT-BASED PROTEIN PER SERVING") are

---

[8] If the Court does not dismiss Plaintiffs' unlawful claims, any such claims should be limited to the NFP. Plaintiffs allege that FFL's failure to include the %DV in the NFP also renders the FFL's front-label quantitative protein claims "unlawful" under the UCL. But even if FFL did not comply with regulations governing the information required in the NFP when a protein claim is made (21 C.F.R. § 101.9(c)(7)), this would not transform an otherwise accurate, non-misleading front-label protein claim into an unlawful one. The duty to provide a %DV arises when a manufacturer makes a protein claim. 21 C.F.R. § 101.9(c)(7). But the fact that this obligation arises when a manufacturer makes a protein claim doesn't mean that the omission of a %DV renders the protein claim *itself* unlawful. Rather, only the omission in the NFP would be unlawful, and any recovery for Plaintiffs under the UCL claim would therefore be limited to the injuries due to the technical violation for that omission.

1  nutrient content claims under 21 C.F.R. § 101.13; FAC at ¶¶ 2-9. However, Plaintiffs also list in

2  Exhibit B to their FAC, FFL's "Ezekiel 4:9 Flourless Sprouted Whole Grain English Muffins"

3  ("English Muffins"), and rather than indicating a statement regarding the amount of protein under

4  the column header "Protein Nutrient Content Claim" Plaintiffs merely state "Complete Protein."

5      The FAC does not discuss the "Complete Protein" statement on the English Muffins a

6  single time, makes no allegations as to how this statement fits into Plaintiffs' claims, and makes

7  no allegation that any product statements other than nitrogen-content protein quantity statements

8  form the basis for Plaintiffs' claims.[9] For this reason, Plaintiffs' English Muffin claims fail to

9  satisfy Federal Rule of Civil Procedure 9(b).[10]

10     Furthermore, as Plaintiffs fail to make any allegations regarding the English Muffins'

11  "Complete Protein" statement, Plaintiffs have failed to establish they have standing to bring these

12  claims. "Standing under Article III of the Constitution requires that an injury be concrete,

13  particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by

14  a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

15  Additionally, to have standing to sue for fraud and misrepresentation under the UCL, CLRA, and

16  FAL, a plaintiff must have "actually relied on whatever defect in a product label allegedly makes

17  it actionable when making her decision to buy the product." *Shaeffer v. Califia Farms, LLC*, 44

18  Cal. App. 5th 1125, 1137 (2020) (internal quotation marks omitted) (citing *Kwikset Corp. v.*

19  *Superior Court*, 51 Cal. 4th 310, 330 (2011) (plaintiffs must allege that they "would not have bought

20  the product but for the misrepresentation" to state a claim based on allegedly misleading advertising)).

21     Plaintiffs do not allege that they relied on, or that they even saw, the statement "Complete

---

[9] Nor could Plaintiffs make any such allegation because the "Complete Protein" statement is not a nutrient content claim under the FDA regulations. 21 C.F.R. § 101.13(b).

[10] When a claim "sounds in fraud," Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." Fed. R. Civ. P. 9(b); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103-04, 1106 (9th Cir. 2003) (citation and internal quotation marks omitted). "Rule 9(b) demands that the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-27 (9th Cir. 2009) (citation omitted). This heightened pleading standard applies to claims for alleged violations of California's consumer protection statutes, including the CLRA, UCL, and FAL. *Id.*

1  Protein" before purchasing the English Muffins, or how they were harmed. Indeed, Plaintiffs'

2  allegations—which concern only reliance regarding a quantitative protein statement—say nothing

3  about the statement "Complete Protein." *See* FAC at ¶ 70.

4      As such, the claims regarding the English Muffins also fail for these additional reasons.

5  **VII.   PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS**

6      **A.   Plaintiffs lack standing for products they did not purchase**

7      Brown alleges that she purchased "Ezekiel 4:9 Sprouted Waffles in the Original and

8  Golden Flax flavors and the Ezekiel 4:9 Burger Buns in the Sprouted Grains and Sesame flavors"

9  (FAC at ¶ 63); Ringler alleges that she purchased "Ezekiel 4:9 Sprouted Flourless Flake cereal in

10 the Raisin flavor" and "Ezekiel 4:9 Flourless Sprouted Whole Grain English Muffins"[11] (FAC at ¶

11 69). Yet Plaintiffs seek to bring claims regarding *24* products, across five product types. *See* FAC

12 at ¶¶ 20-21, Ex. B.

13     Courts within the Ninth Circuit are split on the issue of whether a plaintiff can assert

14 claims for substantially similar products that they did not purchase. *Lorentzen v. Kroger Co.*, 532

15 F. Supp. 3d 901, 908 (C.D. Cal. 2021). Some courts have found that "a plaintiff may bring suit for

16 any 'substantially similar' products not actually purchased," while others have held "absent

17 economic injury, a plaintiff's claims for products she did not purchase must be either dismissed

18 for lack of standing or addressed at the class certification phase of the case." *Id.* at 908 (citing

19 cases). This Court should follow the latter approach and *reject* the "substantial similarity" test

20 because it is "inconsistent with the basic concept of standing," which "extends to each claim and

21 each remedy sought." *Id.* at 908-09 ("Plaintiff bought only one of the eight Products named in the

22 SAC. She therefore did not suffer any injury—economic or otherwise—related to the other seven

23 Products. Because there is no injury, Plaintiff lacks standing to assert these unrelated claims.").

24 For each of the Products Plaintiffs did not purchase, Plaintiffs did not suffer any injury and

25

26

27 _____

28 [11] Plaintiff Ringler does not allege which specific flavor of English Muffins she purchased. As such, it is not clear which variety of English Muffin flavors listed in Exhibit B she alleges to have purchased. *See also infra* Sec. III.D.1.

1   therefore lack Article III standing to asserts claims regarding those Products.[12]

2        Moreover, Plaintiffs lack statutory standing to assert claims regarding the Products that

3   Plaintiffs did not purchase. "To have standing under the UCL, FAL, and CLRA, a plaintiff must

4   allege she suffered an injury in fact and lost money or property as a result of the defendant's

5   alleged conduct." *Lozano v. Bowmar Nutrition LLC*, No. 21-cv-4296, 2021 WL 4459660, at *4

6   (C.D. Cal. Aug. 19, 2021) (dismissing statutory claims "as to products she did not purchase for

7   failure to allege constitutional and statutory standing"). "A plaintiff cannot expand the scope of his

8   claims to include a product he did not purchase or advertisements relating to a product that he did

9   not rely upon." *Id.* at 909 fn. 4 (citation and internal quotation marks omitted). Plaintiffs do not

10  plead facts sufficient to establish statutory standing for Products listed in Exhibit B that they did

11  not purchase. As such, Plaintiffs UCL, CLRA, and FAL claims for unpurchased Products should

12  be dismissed for lack of statutory standing.

13       **B.**     **<u>Plaintiffs lack standing to pursue injunctive relief</u>**

14       To establish standing for injunctive relief, a plaintiff must establish the threat of actual and

15  imminent injury. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 956-57 (9th Cir. 2018). "The

16  threatened injury must be *certainly impending* to constitute injury in fact and allegations of

17  *possible* future injury are not sufficient." *Id.* at 967 (emphasis in original). For an injunction

18  against false advertising or labeling, a previously deceived consumer *may* have standing "because

19  the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future

20  harm." *Id.* at 969; *Jackson v. Gen. Mills, Inc.*, No. 18-cv-2634, 2019 WL 4599845, at *5 (S.D.

21  Cal. Sept. 23, 2019) (noting that the *Davidson* decision "merely holds that injunctive relief *may* be

22  available; the consumer must still establish the threat of actual and imminent injury" and that

---

[12] Even if this Court were to follow the "substantial similarity" analysis approach, Plaintiffs have not alleged sufficient facts about the similarities of the packaging or composition of ingredients of the Products they did not purchase to show that those Products are substantially similar for purposes of Article III standing. *See* FAC at ¶¶ 21-22. "In applying the 'substantial similarity' test, Courts look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Padilla v. Whitewave Foods Co.*, No. LA-cv-1809327, 2019 WL 4640399, at *9 (C.D. Cal. July 26, 2019) (citation and internal quotation marks omitted). Plaintiffs' allegations do not sufficiently address the factors under the "substantial similarity" test.

1  *Davidson* indicated "that standing was unlikely in cases where the threat of future harm was

2  weaker." (emphasis in original).

3       Plaintiffs do not plausibly allege a desire to purchase the Products in the future. Plaintiffs

4  allege that they "continue to desire to purchase protein products" and that "[i]f the Products were

5  reformulated to provide in a usable form the grams of protein that are represented on the labels, or

6  the labels were reformulated to provide non-misleading information, Plaintiff *would likely*

7  purchase them again in the future." FAC at ¶¶ 67, 73 (emphasis added). Plaintiffs' allegation that

8  they "would likely" repurchase the Products *if* certain conditions are met is speculative and

9  therefore conjectural and hypothetical concerning the possibility of future harm. As such,

10  Plaintiffs do not establish that they face a threat of actual and imminent injury, which is essential

11  to establish standing. *See Lanovaz v. Twinings N. Am., Inc.*, 726 Fed. Appx. 590, 591 (9th Cir.

12  2018) (plaintiff's statement that she would "consider buying" Twinings products in the future is

13  not enough to satisfy standing).

14       Additionally, Plaintiffs are aware that the numerical protein statement on the front-label of

15  the Products is a *quantitative* measure of the total amount of protein in grams per serving and is

16  <u>not</u> an adjusted figure based on protein quality, and that FFL uses a variety of plant-based proteins

17  in its products on which the protein claims per serving are calculated. *See e.g.*, FAC at ¶¶ 24-25.

18  Therefore, Plaintiffs understand that any such front-label numerical protein statement is not a

19  protein-quality-adjusted figure and understand that it is the total number of grams per serving that

20  their bodies will receive, regardless of whether their bodies are able to make nutritional use of

21  each of the gram consumed, which depends on their overall daily diet. *Jackson v. Gen. Mills, Inc.*,

22  No. 18-cv-2634, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020) ("where a plaintiff learns

23  information during litigation that enables her to evaluate product claims and make appropriate

24  purchasing decisions going forward, an injunction would serve no meaningful purpose as to that

25  plaintiff."). As such, there is no likelihood that Plaintiffs will be deceived in the future by any such

26  front-label protein claim.

27      **C.**    **Plaintiffs' unjust enrichment claim fails**

28       Plaintiffs allege that "Defendant has been unjustly enriched in retaining the revenues from

Plaintiffs' and Class members' purchases of the Products." FAC at ¶ 131. This claim fails for all of the reasons stated above. Moreover, the standalone unjust enrichment claim also fails because unjust enrichment is not a standalone cause of action under California law. *Astiana v. Hain Celestial Grp. Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). In some situations, courts may "construe the cause of action as a quasi-contract claim seeking restitution." *Id.* But here, Plaintiffs already seek restitution under their UCL (FAC at ¶¶ 94-95), CLRA (*id.* at ¶ 105), and FAL (*id.* at ¶ 116) claims under the same factual basis—that FFL earned monies by sale of the Products using unlawful means. As such, Plaintiffs' unjust enrichment claim is duplicative of their claims under the UCL, CLRA, and FAL. As is the case here, if a claim for restitution is duplicative of statutory claims, that claim is subject to dismissal. *See In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-2918, 2021 WL 4306018, at *24 (N.D. Cal. Sept. 22, 2021) (Chesney, J.) ("Here, plaintiffs, by proceeding with their respective claims for restitution under the UCL, have not waived the tort, but, rather, have chosen to sue in tort. Under such circumstances, plaintiffs' unjust enrichment claims under California law are 'duplicative' and subject to dismissal.") (citation omitted); *see also Silver v. Stripe Inc.*, No. 20-cv-8196, 2021 WL 3191752, at *8 (N.D. Cal. July 28, 2021) (Rogers, J.).

### D.    Plaintiffs' request for equitable relief fails

Plaintiffs' requests for equitable relief (restitution and injunctive relief) under the UCL, CLRA, and FAL fail because Plaintiffs fail to establish that no adequate remedy at law is available. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (requiring plaintiff to plead that they lack an adequate remedy at law). Some courts require that plaintiffs plead "specific facts" to meet this burden. *Amans v. Tesla, Inc.*, No. 21-cv-3577, 2022 WL 2952474, at *1 (N.D. Cal. July 26, 2022) (Chhabria, J.); *see e.g.*, *Phan v. Sargento Foods, Inc.*, No. 20-cv-9251, 2021 WL 2224260, at *5 (N.D. Cal. June 2, 2021) (stating that "it is not an unfair burden to require Plaintiffs to explain why legal remedies are inadequate in their pleading").

Here, Plaintiffs have not "plausibly alleged the inadequacy of legal remedies for each claim for equitable relief they seek." *Cepelak v. HP Inc.*, No. 20-cv-2450, 2021 WL 5298022, at *3 (N.D. Cal. Nov. 15, 2021) (Chhabria, J.) ("The relevant inquiry is not what other claims the

1   plaintiffs have raised, but whether they have plausibly alleged the inadequacy of legal remedies

2   for each claim for equitable relief that they seek."). Plaintiffs seek compensatory and statutory

3   damages, among other relief, and do not adequately explain why such legal remedies are

4   inadequate. FAC, Prayer for Relief, ¶¶ C, D. Plaintiffs allege a hypothetical and alternative theory

5   of recovery (*id.* at ¶ 116), but this does not change the fact that Plaintiffs' claims for such relief are

6   rooted in the same theory and factual allegations as their claims for damages. As such, Plaintiffs'

7   alternative theory is duplicative of Plaintiffs' legal causes of action and not a true alternative

8   theory of relief. *See Elgindy v. AGA Serv. Co.*, No. 20-cv-6304, 2021 WL 1176535, at *15 (N.D.

9   Cal. Mar. 29, 2021) (Tigar, J.)). Plaintiffs therefore have not sufficiently demonstrated why the

10  legal relief Plaintiffs seek is inadequate. Because only equitable relief is available under the UCL

11  and FAL (*Robinson v. J.M. Smucker Co.*, No. 18-cv-4654, 2019 WL 2029069, at *6 (N.D. Cal.

12  May 8, 2019) (Gilliam, J.) ("[T]he UCL and FAL provide for only equitable relief," but "there is

13  no right to equitable relief or an equitable remedy when there is an adequate remedy at law.")), the

14  Court should dismiss Plaintiffs' UCL and FAL claims in their entirety. Additionally, the Court

15  should dismiss Plaintiffs' request for equitable relief under the CLRA.

16          **E.      Plaintiffs' request for punitive damages fails**

17          Plaintiffs seek punitive damages under the CLRA. FAC at ¶ 105, Prayer for Relief, ¶ E).

18  But Plaintiffs do not sufficiently plead facts supporting such a request because they fail to allege

19  "oppression, fraud, or malice" by an "officer, director, or managing agent" of Defendant. *See*

20  *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-3613, 2020 WL 1245130, at *14 (N.D.

21  Cal. Mar. 16, 2020) (Orrick, J.); *Robinson*, 2019 WL 2029069, at *7 (dismissing request for

22  punitive damages; stating "Plaintiff does not plead any facts to support an award of punitive

23  damages because she does not allege that any individual committed willful and malicious

24  conduct."); *see also Martin v. Tradewinds Beverage Co.*, No. 16-cv-9249, 2017 WL 1712533, at

25  *11 (C.D. Cal. Apr. 27, 2017) (dismissing request for punitive damages, explaining "[a]lthough

26  Plaintiff alleges in her Complaint that 'Tradewinds has advertised the Iced Tea Products in a

27  manner that is untrue and misleading, which Tradewinds knew or reasonably should have known,'

28  such an allegation does not rise to the standard demanded by section 3294.") (internal quotation

marks omitted) (citing Cal. Civ. Code § 3294(a)). Accordingly, Plaintiffs' request for punitive

damages under the CLRA is not adequately pled.

Additionally, "punitive damages are not recoverable under the UCL or FAL" (*Rice-Sherman*, 2020 WL 1245130, at *14), and California law does not allow punitive damages for negligent misrepresentations (*Martin*, 2017 WL 1712533, at *11) ("The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages.") (citation and internal quotation marks omitted)). Therefore, as a matter of law, Plaintiffs cannot seek punitive damages via any of their claims other than under the CLRA. Plaintiffs' request for punitive for damages should be dismissed.

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, FFL respectfully requests that the Court dismiss the FAC with prejudice.

Dated:  November 21, 2022                            LUBIN OLSON & NIEWIADOMSKI LLP

By:   /s/ Ellen A. Cirangle
Ellen A. Cirangle
Attorneys for Defendant
FOOD FOR LIFE BAKING CO., INC.