UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLY BROWN, et al., | Case No.  21-cv-10054-TLT |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| FOOD FOR LIFE BAKING CO., INC., | Re: ECF No. 29 |
| Defendant. | |

Pending before the Court is Defendant Food for Life Baking Co., Inc. ("FFL")'s motion to dismiss Plaintiffs' first amended complaint.  For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.  Plaintiffs may amend their complaint within 14 days of this Order.

## I.      BACKGROUND

### A.      Factual background

Defendant manufactures, distributes, markets, advertises, and sells a variety of food products under the brand name "Ezekiel 4:9," including cereals, waffles, pasta, buns, and English muffins.  First Amended Complaint ("FAC") ¶ 20; *Id.*, Ex. B (listing of products).  The front label of these products claim that each serving contains a certain amount of protein.  *Id.* ¶ 20.  The Nutrition Facts Panel ("NFP") on the back label of the products do not state the corrected amount of protein per serving, expressed as %DV (daily value).  *Id.* ¶ 23.

From 2018 to 2021, Plaintiff Molly Brown purchased Defendant's Ezekiel 4:9 Sprouted Waffles in the Original and Golden Flax flavors and the Ezekiel 4:9 Burger Buns in the Sprouted Grains and Sesame flavors.  *Id.* ¶ 63.  In 2020, Plaintiff Adina Ringler purchased Defendant's Ezekiel 4:9 Sprouted Flourless Flake cereal in the Raisin flavor and Ezekiel 4:9 Flourless Sprouted Whole Grain English Muffins.  *Id.* ¶ 69.  Plaintiffs alleged that they relied on the amount

1  of protein stated on the front on the package when making the purchase, believing that the stated

2  amount of protein is in a form her body could utilize.  *Id.* ¶¶ 64, 70.  Plaintiffs also looked at the

3  NFP before purchasing the products for the first time.  *Id.* ¶¶ 65, 71.

4      As alleged by the FAC, "not all proteins are the same in their ability to meet human

5  nutritional requirements."  *Id.* ¶ 3.  Proteins are composed of amino acids, of which humans

6  cannot produce nine of the twenty amino acids.  *Id.* ¶ 29.  A protein source that contains all nine of

7  these amino acids is known as a complete protein.  *Id.* ¶ 30.  The amount of protein that can be

8  absorbed by humans is also affected by the protein source's digestibility.  *Id.* ¶ 31.  The

9  digestibility of a food is reflected by its Protein Digestibility Corrected Amino Acid Score

10  ("PDCAAS").  *Id.* ¶ 32.  This score ranges from 0 to 1, with higher quality protein sources having

11  a higher value.  *Id.* ¶ 33.  Plaintiffs alleged that Defendants' products use low quality proteins with

12  a PDCAAS of 0.4 to 0.5.  *Id.* ¶ 34.

13      **B.      Procedural Background**

14      After Plaintiffs brought this suit, the parties stipulated to stay the case pending the appeal

15  of *Chong, et al. v. Kind, LLC*, No. 21-cv-4528-RS.  ECF No. 21.  Subsequently, Plaintiffs

16  withdrew their agreement to stay the case and the parties stipulated to Plaintiffs filing a FAC.

17  ECF No. 25.  Plaintiffs bring a number claims on behalf of themselves, a nationwide class, and a

18  California subclass: (1) violation of the Unfair Competition Law ("UCL"), Business & Profession

19  Code § 17200, *et seq.*; (2) violation of the Consumers Legal Remedies Act ("CLRA"), California

20  Civil Code § 1750, *et seq.*; (3) violation of the False Advertising Law ("FAL"), Business &

21  Professions Code § 17500, *et seq.*; (4) common law fraud, deceit, and/or misrepresentation; and

22  (5) unjust enrichment.  FAC.  In response, Defendants filed the instant motion to dismiss under

23  Federal Rules of Procedure Rules 12(b)(1) and 12(b)(6).

24      **C.      Regulatory Background**

25      The Food and Drug Administration ("FDA") identifies labeling requirements for food

26  products.  For proteins, the NFP must include "[a] statement of the number of grams of protein in

27  a serving, expressed to the nearest gram."  21 C.F.R. § 101.9(c)(7).  "Protein content may be

28  calculated on the basis of the factor 6.25 times the nitrogen content of the food as determined by

United States District Court
Northern District of California

1    the appropriate method of analysis as given in the "Official Methods of Analysis of the AOAC

2    International. . ." (the "nitrogen method").  *Id.*

3        In general, manufacturers may not include a nutrient content claim outside of the NFP.  21

4    C.F.R. § 101.13(b).  Nutrient claims cannot "implicitly characterize the level of the nutrient in the

5    food" and be "false and misleading in any respect."  *Id.* § 101.13(i)(3).  If a protein claim is made

6    outside of the NFP, the corrected amount of protein per serving, expressed as %DV, "shall" be

7    included in the NFP.  *Id.* § 101.9(c)(7)(i).  This value takes the amount of protein and adjusts it

8    with the PDCAAS score.  *Id.* § 101.9(c)(7)(ii).  Both the total amount and the adjusted value may

9    be used as a protein claim:

10

11        Which method should be used when calculating protein values for use
             in protein nutrient content claims?
12        . . .
             By design, 21 CFR 101.9(c)(7) specifically provides for two different
13        methods for determining protein values…Determination of
             compliance for protein nutrient content claims will be based on the
14        use of the methods provided in 21 CFR 101.9(c)(7), including either
             of the methods mentioned above.

15    *Industry Resources on the Changes to the Nutrition Facts Label*, U.S. Food & Drug

16    Administration, https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-

17    nutrition-facts-label (last visited February 24, 2023).

18    **II.    JUDICIAL NOTICE**

19        "The Court may judicially notice a fact that is not subject to reasonable dispute because it:

20    (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

21    readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

22    201(b).  The Court may "consider materials that are submitted with and attached to the Complaint.

23    [The Court] may also consider unattached evidence on which the complaint 'necessarily relies' if:

24    (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and

25    (3) no party questions the authenticity of the document."  *United States v. Corinthian Colleges*,

26    655 F.3d 984, 999 (9th Cir. 2011).

27        Defendant requests judicial notice of a webpage containing FDA's guidance regarding

28    product labeling.  Request for Judicial Notice, Ex. 1, ECF No. 29-2.  Plaintiff does not object.  As

United States District Court
Northern District of California

1  this information is publicly available on a government website, the Court takes judicial notice of

2  this exhibit.

3  **III.    LEGAL STANDARD**

4      **A.    Subject Matter Jurisdiction**

5      Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction.

6  Fed. R. Civ. P. 12(b)(1).  "[L]ack of Article III standing requires dismissal for lack of subject

7  matter jurisdiction under [Rule] 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir.

8  2011).  The "irreducible constitutional minimum" of standing requires that a "plaintiff must have

9  (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

10  and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578

11  U.S. 330, 338 (2016).  These three elements are referred to as injury-in-fact, causation, and

12  redressability, respectively.  *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of*

13  *Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020).  "The plaintiff, as the party

14  invoking federal jurisdiction, bears the burden of establishing these elements.  Where, as here, a

15  case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element."

16  *Spokeo*, 578 U.S. at 338.

17      **B.    Failure to State a Claim**

18      Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which

19  relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To overcome a motion to dismiss, a plaintiff's

20  "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible

21  chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v.*

22  *Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)).  The

23  court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the

24  light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

25  F.3d 1025, 1031 (9th Cir. 2008).  "A claim has facial plausibility when the Plaintiff pleads factual

26  content that allows the court to draw the reasonable inference that the Defendant is liable for the

27  misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a

28  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

United States District Court
Northern District of California

4

1    unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Although for the purposes of a motion to

2    dismiss [the Court] must take all of the factual allegations in the complaint as true," the Court is

3    "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678.

4    **IV.    DISCUSSION**

5    **A.    Express Preemption**

6    The Court first addresses Plaintiffs' "ancillary claim that Plaintiff preserves solely for

7    purposes of appeal"—"the methodology that FFL used to support the protein claims it makes on

8    the front labels of its food products." Opp'n at 1:3–5. This is essentially the theory that the front

9    label is on its own misleading. State claims that are not identical to the Food, Drug, and Cosmetic

10   Act ("FDCA") are expressly preempted. 21 U.S.C. § 343-1(a). Here, the FDA expressly allows

11   front label protein claims based on the nitrogen method. As such, Plaintiff's claims based on

12   fraud regarding the front label protein claim due to the methodology is expressly preempted and

13   dismissed. *See Roffman v. Perfect Bar, LLC*, No. 22-CV-02479-JSC, 2022 WL 4021714, at *8

14   (N.D. Cal. Sept. 2, 2022) (collecting cases). As this is a defect with the legal theory, the dismissal

15   is without leave to amend.

16   Similarly, the Court finds that Plaintiffs' claims based on the front label being misleading

17   due to the omitted amount of protein per serving as percent daily value is also expressly

18   preempted. As discussed above, the FDA expressly allows front panel protein claims to be

19   determined by the nitrogen method. Thus, regardless of whether the corrected protein percent

20   daily value was listed on the NFP, the total amount of protein on the front panel—the amount

21   determined by the nitrogen method—remains unchanged. Thus, while "the FDA requires

22   manufacturers to include extra information in the Nutrition Facts label (the digestibility-adjusted

23   figure, expressed as a percent of daily value) when they make statements about protein elsewhere

24   on the packaging," "this does not mean that statements of protein quantity would be misleading

25   without this additional context." *Nacarino v. Kashi Co.*, 584 F. Supp. 3d 806, 810 (N.D. Cal.

26   2022). Here, the front panel contain statements such as "7g PLANT-BASED PROTEIN PER

27   SERVING." FAC ¶¶ 2, 6, 7, 9. Finding this statement about the quantity of protein misleading

28   because of the lack of additional information in the NFP about the quality of the protein would

United States District Court
Northern District of California

5

challenge conduct permitted by the FDA regulations.  On its face, the protein nutrient claim is similar to those that are defined as not false or misleading— "100 calories" or "5 grams of fat."  21 C.F.R. § 101.13(i)(3).  The regulations simply require more information on the NFP.  The absence of the information, however, does not render the front label false or misleading.  As such, the front label statement does not plausibly serve as a predicate for a claim based on fraud.  *See Roffman*, 2022 WL 4021714, at *7 ("Since the regulations allow a nitrogen-method figure on the nutrition facts panel without any other information, Plaintiffs' claim that the nitrogen-method figure on the front label without any other information is misleading conflicts with and is not identical to FDA regulations and is thus preempted.").  Accordingly, claims based on fraud that rely on the theory that the front label is misleading because of missing information in the NFP are dismissed.  As this is a defect with the legal theory, the dismissal is without leave to amend.

**B.     Implied Preemption**

Defendant argues that Plaintiff's unlawful claim based on the omission of the percent daily value on the NFP is impliedly preempted under *Buckman Co. v. Plaintiff' Legal Comm.*, 531 U.S. 341 (2001).  *Buckman* impliedly preempts claims that seek to privately enforce the FDCA; however, claims that challenge conduct that violates the Act are allowed.  *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) ("[T]he plaintiff must be suing for conduct that violates the FDCA . . . [T]he plaintiff must not be suing because the conduct violates the FDCA.").  Here, the Sherman Law mirrors the FDCA and the conduct alleged is omission of the percent daily value of protein in the NFP, which allegedly led Plaintiffs to believe that all of the protein in the products would be absorbed.  Plaintiffs also disclaim bringing any claim under the FDCA.  FAC at 25:4–8.  This is sufficient at this stage.

Defendant argues that this Court should follow the lead of the court in *Chong, et al. v. Kind, LLC*, 585 F. Supp. 3d 1215, 1219 (N.D. Cal. 2022) to find Plaintiff's unlawful claim preempted.  Reply at 7:4–9:7.  However, similar to other courts in this district, the Court is not persuaded that *Buckman* can be applied to essentially cancel out all violations of the Sherman Law, which adopts the labeling requirements as state law.  *See, e.g.*, *Roffman*, 2022 WL 4021714, at *5 ("Plaintiffs' state law claims based on the theory that Defendant's front-label protein claims

1   are unlawful without corresponding PDCAAS figures on the nutrition facts panel are not impliedly

2   preempted under *Buckman*."); *Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022

3   WL 1471454, at *8 (N.D. Cal. May 10, 2022) ("In light of the 'strong presumption against federal

4   preemption in the area of marketing food,' I am hesitant to infer implied preemption in this

5   context.") (citation omitted).  As such, and for the reasons discussed in *Roffman* and *Van's*, the

6   Court declines to follow *Chong*'s lead.

7        Accordingly, Plaintiff's claims based on omission of the percent daily value are not

8   impliedly preempted.  Defendant's motion to dismiss them is denied.

9        **C.      Standing**

10       In order to have standing, all of Plaintiffs' claims must have injury-in-fact, causation, and

11   redressability.

12            **1.      Reliance**

13       Defendant argues that all of Plaintiffs' claims fail because Plaintiffs alleged reliance on the

14   protein claim on the front label, which is a quantity figure that does not convey quality.  Plaintiffs'

15   claims under the UCL, CLRA, and FAL require Plaintiffs to have "actually relied on whatever

16   defect in a product label allegedly makes it actionable when making her decision to buy the

17   product."  *Roffman*, 2022 WL 4021714, at *5 (citation omitted); *see also Brown v. Van's Int'l*

18   *Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 3590333, at *4 (N.D. Cal. Aug. 22, 2022) ("To

19   establish standing under the UCL, CLRA, or FAL, a plaintiff must allege reliance on the purported

20   misrepresentations at issue and economic injury as a result.").  This requirement applies equally to

21   the unlawful prong of the UCL.  *Id.*

22       Here, Plaintiffs' primary theory is that the front label claims are unlawful without the

23   corresponding percent daily value in the NFP.  Thus, Plaintiffs must allege that they relied on the

24   omission of the percent daily value in the NFP.  Plaintiffs alleged that they relied on the front label

25   when making their purchase.  FAC ¶¶ 64, 70.  They also alleged that they "looked at and read the

26   NFP" on the products prior to their first purchase.  *Id.* ¶¶ 65, 71.  Moreover, if they knew that the

27   corrected amount of protein per serving were less than the number on the front panel, Plaintiffs

28   would not have purchased the products or paid less for them.  *Id.*  These allegations are sufficient

United States District Court
Northern District of California

United States District Court
Northern District of California

1   for the Court to infer that Plaintiffs relied on the omission in the NFP in making their purchase.

2   While Defendant argues that the front label cannot be misleading, this does not prevent Plaintiffs'

3   actual reliance on the omission of the percent daily value in the NFP.  Accordingly, Defendant's

4   motion to dismiss all claims due to lack of reliance is denied.

### 2.    Products Plaintiffs Did Not Purchase

6   Defendant argues that Plaintiffs do not have standing to bring claims for products they did

7   not purchase.  Exhibit B of the FAC lists 24 products, of which Plaintiffs alleged having

8   purchased six.  Courts in the Ninth Circuit are split on whether plaintiffs may bring suit for such

9   products:

> Some district courts have held that a plaintiff may bring suit for any "substantially similar" products not actually purchased. . .  *See Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1083 (N.D. Cal. 2014) (noting that courts "look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling"). Others have concluded that absent economic injury, a plaintiff's claims for products she did not purchase must be either dismissed for lack of standing or addressed at the class certification phase of the case.)

15  *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021).  However, a majority of

16  courts in this District have held that "a plaintiff may have standing to assert claims for unnamed

17  class members based on products he or she did not purchase so long as the products and alleged

18  misrepresentations are substantially similar."  *Roffman v. Rebbl, Inc.*, No. 22-CV-05290-JSW,

19  2023 WL 1420724, at *3 (N.D. Cal. Jan. 31, 2023).

20  Here, Plaintiffs alleged that "[t]he nutrition facts panel on the Products uniformly and

21  consistently failed to provide any statement of the corrected amount of protein per serving,

22  expressed as a %DV, throughout the Class Period."  FAC ¶ 22.  As this alleged omission is the

23  same for all of the accused products, the Court finds that they are substantially similar.  Issues

24  pertaining to specific products can be addressed at the class certification stage.  Accordingly, the

25  Court finds that Plaintiffs have standing to include products they did not purchase at this stage.

### 3.    Injunctive Relief

27  Defendant argues that Plaintiffs lack standing to seek an injunction.  In the Ninth Circuit,

28  "a previously deceived consumer may have standing to seek an injunction against false advertising

8

1   or labeling, even though the consumer now knows or suspects that the advertising was false at the

2   time of the original purchase, because the consumer may suffer an 'actual and imminent, not

3   conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d

4   956, 969 (9th Cir. 2018) (citation omitted).  "In some cases, the threat of future harm may be the

5   consumer's plausible allegations that she will be unable to rely on the product's advertising or

6   labeling in the future, and so will not purchase the product although she would like to." *Id.* at

7   969–70.  "In other cases, the threat of future harm may be the consumer's plausible allegations

8   that she might purchase the product in the future, despite the fact it was once marred by false

9   advertising or labeling, as she may reasonably, but incorrectly, assume the product was

10  improved." *Id.* at 970.

11       Here, Plaintiffs alleged facts to support the first scenario.  Plaintiffs alleged that "[i]f the

12  Products were reformulated to provide in a usable form the grams of protein that are represented

13  on the labels, or the labels were reformulated to provide non-misleading information, Plaintiff[s]

14  would likely purchase them again in the future."  FAC ¶¶ 67, 73.  In addition, Plaintiffs alleged

15  that they regularly visit stores where these products are sold and are unable to determine the

16  amount of digestible protein prior to purchasing them.  *Id.*  Plaintiffs have pled a threat of future

17  harm.  *See Davidson*, 889 F.3d at 979–70.

18       Defendant argues that "assertions that a plaintiff 'would be interested in purchasing' the

19  same, non-reformulated product again if the allegedly mislabeled product's label was made

20  accurate fail to provide standing to pursue injunctive relief."  Reply at 12:15–18 (citing *In re*

21  *Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*, No. 20-15742, 2021 WL 3878654, at *2–3

22  (9th Cir. Aug. 31, 2021)).  The Court finds that *In re Coca-Cola* is distinguishable.  As the court in

23  *Naracino v. Chobani* explained, the plaintiffs there:

24           (1) did not specify whether they would purchase the allegedly
             mislabeled Coke in the future; (2) alleged that they "would consider
25           purchasing" Coke depending on several factors, including but not
             limited to what disclosures Coca-Cola provided regarding phosphoric
26           acid or any other ingredient in Coke; or (3) asserted that "they would
             be interested in purchasing Coke again if its labels were accurate,
27           regardless of whether it contained chemical preservatives or artificial
             flavors."

28

United States District Court
Northern District of California

No. 20-CV-07437-EMC, 2022 WL 344966, at *12 (N.D. Cal. Feb. 4, 2022) (citing *In re Coca-Cola*, 2021 WL 3878654 at *2). Here, Plaintiffs alleged that they would purchase the products again if it were reformulated to provide the claimed amount of digestible protein or if the labels were changed. FAC ¶¶ 67, 73. Thus, the allegations here and those in *In re Coca-Cola* are sufficiently different.

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's request for injunctive relief on standing grounds.

### D.      Unjust Enrichment

The Court next determines whether Plaintiffs have stated a claim for unjust enrichment. There is a split among California courts on whether there is a cause of action for unjust enrichment. *Compare Hernandez v. Lopez*, 180 Cal. App. 4th 932, 939 (2009) ("The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so. In any event, there is no particular form of pleading necessary to invoke the doctrine of restitution.") (citation omitted) *with Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779 (2003) ("[T]here is no cause of action in California for unjust enrichment. The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so. Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself.") (citations omitted). Both positions are in agreement that unjust enrichment is an equitable doctrine for restitution where the remedy at law is insufficient.

Even if the Court takes the position that unjust enrichment is not a standalone claim under California law, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotations omitted). Here, Plaintiffs alleged that Defendant benefitted from the alleged misconduct of representing that the products provided specific amounts of protein per serving. FAC ¶ 131. Plaintiffs also alleged that they have no remedy at law to obtain restitution. *Id.* ¶ 132. At this stage, the Court will construe the unjust

1    enrichment claim as a quasi-contract claim for restitution.

2        Accordingly, Defendant's motion to dismiss Plaintiff's unjust enrichment claim is denied.

3        **E.    Equitable Relief**

4        Defendant also challenges the equitable relief that Plaintiff seeks under their UCL, CLRA,

5    and FAL claims.  Plaintiffs respond that they do not seek equitable restitution under the CLRA.

6    Opp'n at 24:4–5.  As such, Plaintiffs' CLRA claim is dismissed to the extent it seeks equitable

7    restitution.

8        In order to obtain equitable relief, Plaintiffs must lack an "adequate remedy at law." *Mort*

9    *v. U.S.*, 86 F.3d 890, 892 (9th Cir. 1996).  Here, Plaintiffs have alleged so.  *See* FAC ¶¶ 94, 95, 116.

10   At this stage, where it is not apparent whether the remedies at law are sufficient, equitable restitution

11   may be pled in the alternative.  *See Chobani*, 2022 WL 344966, at *9–10.  In addition, the Court

12   finds that *Sonner* is not a bar to equitable restitution at this stage.  There, the plaintiff failed to

13   establish that she lacked an adequate remedy at law because the unavailability of the remedy came

14   from plaintiff choosing to drop a claim.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th

15   Cir. 2020).  As such, *Sonner* does not stand for the proposition that pleading in the alternative is

16   disallowed.

17       Accordingly, Defendant's motion to dismiss Plaintiff's UCL and FAL claims for equitable

18   relief is denied.  This issue may be revisited at a later stage.

19       **F.    Punitive Damages**

20       Defendant also argues that Plaintiff's request for punitive damages under the CLRA and

21   fraud claims must be dismissed.  Punitive damages are not available under the UCL and FAL.

22   *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 926 (E.D. Cal. 2020).  Plaintiff does not

23   argue otherwise.  Thus, to the extent the FAC seek punitive damages under the UCL or FAL, they

24   are dismissed.

25       The parties disagree regarding the proper pleading standard for punitive damages.

26   Defendant argues that the heightened standard under California Civil Code Section 3294(a) is

27   appropriate.  Meanwhile, Plaintiff argues that a short and plain statement that satisfies Federal

28   Rules of Civil Procedure Rule 9 is sufficient.  Regardless of the standard, however, "a corporate

*United States District Court*
*Northern District of California*

1  entity cannot commit willful and malicious conduct; instead, 'the advance knowledge and

2  conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on

3  the part of an officer, director, or managing agent of the corporation.'"  *In re Yahoo! Inc.*

4  *Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1147 (N.D. Cal. 2018) (citations

5  omitted).  Thus, Plaintiff must allege that "an officer, director, or managing agent of Defendant []

6  committed an act of oppression, fraud, or malice."  *Id.*  Here, Plaintiffs made no such allegations.

7  Accordingly, the Court dismisses Plaintiffs' request for punitive damages, with leave to amend.

8        **G.**    **FFL's English Muffins**

9        Finally, Defendant argues that claims against its English Muffins products must be

10  dismissed.  The Court agrees.  As the FAC alleged, the English Muffin products contain the

11  nutrient content claim of "Complete Protein."  FAC, Ex. B.  Unlike the other identified products,

12  this nutrient content claim does not convey any quantitative information regarding the protein in

13  the product.  The FAC explained that a "complete protein" is "[a] dietary protein containing all of

14  the essential amino acids in the correct proportions."  *Id.* ¶ 30.  Thus, the "Complete Protein"

15  claim on the English Muffin products is a statement about the quality, not the quantity, of protein.

16  The FAC, however, lacks allegations that address this in the context of each of Plaintiffs' claims.

17  In fact, the phrase "complete protein" appears only once in the FAC, when the term is defined.

18  Thus, without more, the Court finds that Plaintiffs have not sufficiently pled causes of action that

19  pertain to the English Muffin products.  Accordingly, Plaintiffs' claims are dismissed to the extent

20  they are against the English Muffin products, with leave to amend.

21  **V.**    **CONCLUSION**

22        For the foregoing reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN**

23  **PART**.  Plaintiffs' claims that rely on the theory that the front label is misleading due to the

24  methodology or the missing information in the NFP are dismissed without leave to amend.

25        Defendant's motion to dismiss Plaintiffs' claims based on omission in the NFP is denied.

26  Defendant's motion to dismiss all claims due to lack of reliance is denied.  Defendant's motion to

27  dismiss Plaintiffs' claims for products they did not purchase is denied. Defendant's motion to

28  dismiss Plaintiffs' request for injunctive relief is denied.  Defendant's motion to dismiss Plaintiff's

United States District Court
Northern District of California

unjust enrichment claim is denied.  Defendant's motion to dismiss Plaintiff's UCL and FAL claims for equitable relief is denied.  Plaintiff's CLRA claim is dismissed to the extent it seeks equitable restitution, with no leave to amend.

Plaintiffs' request for punitive damages is dismissed, with leave to amend.  Plaintiffs' claims against Defendant's English Muffin products are dismissed, with leave to amend.  Plaintiffs may file an amended complaint within fourteen (14) days of this Order.

**IT IS SO ORDERED.**

Dated: February 27, 2023

TRINA L. THOMPSON
United States District Judge